[No. D013387. Fourth Dist., Div. One. Jan. 29, 1992.]

JACK A. SOMMERS, Plaintiff and Respondent, v.
PETER ERB et al., Defendants and Appellants.

**COUNSEL**

Daley & Heft, Dan Groszkruger, Patricia A. Shaffer and Katherine Megli for Defendants and Appellants.

Thomas W. Hauser for Plaintiff and Respondent.

## OPINION

**TODD, J.**—Peter and Joan Erb appeal a judgment awarding Jack A. Sommers attorney fees pursuant to Code of Civil Procedure[1] section 1021.4. The judgment stemmed from a drunk driving truck-motorcycle collision. The Erbs contend (1) Sommers was not entitled to attorney fees under the statute because he, as well as Peter Erb, was driving while intoxicated when the collision occurred and (2) the amount of the award was excessive and an abuse of the trial court's discretion.

### FACTS

On November 24, 1987, Sommers was injured when his motorcycle collided with a pickup truck driven by Peter Erb on Balboa Avenue in San Diego. The collision occurred when Erb pulled out of a driveway and attempted to make a left-hand turn heading west onto Balboa. Sommers's motorcycle, traveling eastbound on Balboa, struck the truck and Sommers was thrown off the motorcycle. The investigating police officer concluded Erb had violated Sommers's right-of-way and this was the cause of the collision. The police report characterized Sommers as "obviously drunk" and Erb as having his "ability impaired." Erb was charged with violating Vehicle Code section 23153 (causing bodily injury while driving under the influence) and Sommers was cited for violating Vehicle Code section 23152 (driving under the influence).

Erb pleaded guilty to one count of Vehicle Code section 23153, subdivision (a). Because of Erb's prior drunk driving convictions, this count was a felony. (Veh. Code, § 23190.) The record does not indicate any criminal proceedings with respect to Sommers, nor does it contain any admissible evidence concerning his intoxication at the time of the collision other than the police report.[2] However, given the information contained in the police report, we shall for purposes of our factual recitation view Sommers as driving under the influence at the time of the collision.

Sommers suffered injuries to his right foot, hip and elbow as well as facial lacerations. He claimed medical expenses of approximately $40,000 and lost

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] The record on appeal includes a declaration by Erb's counsel that Sommers admitted to using methamphetamine on the day of the collision, but none of the deposition is attached to counsel's declaration or included anywhere in the appellant's appendix. Similarly, counsel's declaration refers to a toxicology report from Sharp Hospital that purports to show that on the day following the collision Sommers tested positive for amphetamines, cocaine and marijuana. However, the toxicology report is not attached to counsel's declaration nor included in the appellant's appendix. Finally, counsel's declaration recites a comment Sommers allegedly told his neurologist about daily methamphetamine use. This last point is hearsay without any support in the record before us.

earnings of $11,650. He also claimed permanent disabilities, including loss of motion and stiffness of his right elbow and wrist.

On June 1, 1990, the parties filed a stipulated judgment in favor of Sommers in the amount of $115,000 for general and special damages only and not for punitive damages. The issue of attorney fees was expressly left open for resolution by the trial court.

Also, on June 1, 1990, Sommers filed a memorandum of costs, requesting, in addition to ordinary costs, attorney fees of $38,333 pursuant to section 1021.4. This amount represented one-third of the award in the stipulated judgment and was calculated according to the contingency fee agreement between Sommers and his attorney, providing for one-third attorney fees. On July 2, 1990, the Erbs filed a motion to tax costs, in which they challenged Sommers's right to attorney fees. On August 6, 1990, the trial court heard and denied the motion by the Erbs and awarded Sommers attorney fees in the requested amount. An order to that effect was filed August 20, 1990.

After receiving payment of $15,000—the available policy limits on the Erbs's automobile insurance policy—Sommers executed a compromise of action and covenant-not-to-execute in full satisfaction of the judgment with the exception of attorney's fees. This document, however, was not filed with the court until April 4, 1991.

DISCUSSION

I

The Erbs contend, as a matter of law, Sommers was not entitled to attorney fees under section 1021.4 because his driving under the influence rendered him a noninnocent victim and the statute was not intended to award attorney fees to such persons. The contention is without merit.

Section 1021.4 provides:

"In an action for damages against a defendant based upon that defendant's commission of a felony offense for which that defendant has been convicted, the court may, upon motion, award reasonable attorney's fees to a prevailing plaintiff against the defendant who has been convicted of the felony."

In *Wood* v. *McGovern* (1985) 167 Cal.App.3d 772 [213 Cal.Rptr. 498], this court analyzed section 1021.4, recounting its history as a legislative response

to Proposition 8, the so-called Victims' Bill of Rights, adopted by the people at the June 8, 1982, primary election. Among other things, Proposition 8 added a provision to the state Constitution recognizing the right of crime victims to restitution and directing the Legislature to adopt laws to implement the provision during the next calendar year. (Cal. Const. art. I, § 28, subd. (b).)[3] Section 1021.4 (Stats. 1983, ch. 938, § 3, p. 3391, eff. Sept. 20, 1983) was among the legislation enacted in response to the mandate of Proposition 8 to assist crime victims in obtaining restitution through civil actions. (*Wood, supra*, 167 Cal.App.3d at p. 774.)

The Erbs argue that language in the preamble of Proposition 8, declarative of the purpose of the initiative to combat crimes "causing injury to innocent victims" (Cal. Const. art. I, § 28, subd. (a)), forecloses relief to those who, like Sommers, cannot be characterized as innocent victims.[4] Such a reading of Proposition 8 was put to rest in *Wood, supra*, 167 Cal.App.3d at pages 777 to 778, when we explained:

"The Proposition 8 restitution rights afforded victims for the losses they suffer from the person convicted of crimes is the first of the two pillars upon which rests the Victims' Bill of Rights.

"The preamble (Cal. Const., art. I, § 28, subd. (a)) recites the rights of victims pervade the criminal justice system. The first pillar encompasses: '. . . not only the right to restitution from the wrongdoers for financial

---

[3]Article I, section 28, subdivision (b) of the California Constitution reads:

"Restitution. It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer.

"Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary. The Legislature shall adopt provisions to implement this section during the calendar year following adoption of this section."

[4]Article I, section 28, subdivision (a) of the California Constitution reads:

"The People of the State of California find and declare that the enactment of comprehensive provisions and laws ensuring a bill of rights for victims of crime, including safeguards in the criminal justice system to fully protect those rights, is a matter of grave statewide concern.

"The rights of victims pervade the criminal justice system, encompassing not only the right to restitution from the wrongdoers for financial losses suffered as a result of criminal acts, but also the more basic expectation that persons who commit felonious acts causing injury to innocent victims will be appropriately detained in custody, tried by the courts, and sufficiently punished so that the public safety is protected and encouraged as a goal of highest importance.

"Such public safety extends to public primary, elementary, junior high, and senior high school campuses, where students and staff have the right to be safe and secure in their persons.

"To accomplish these goals, broad reforms in the procedural treatment of accused persons and the disposition and sentencing of convicted persons are necessary and proper as deterrents to criminal behavior and to serious disruption of people's lives."

losses suffered as a result of criminal acts' and the second pillar describes: '. . . but also the more basic expectations that persons who commit felonious acts causing injury to innocent victims will be appropriately detained in custody, tried by the courts, and sufficiently punished so that the public safety is protected and encouraged as a goal of highest importance.'

"Restitution rights are thus separately stated in the findings of the electorate from those provisions concerned with crime and criminal proceedings. In turn, [article I,] section 28(b) concerning restitution is likewise in two parts. The first paragraph provides '. . . all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer.' The second paragraph requires restitution be ordered from convicted persons in every case regardless of sentence or disposition absent extraordinary or compelling reasons to the contrary.

"We read the second paragraph to refer to crimes, criminal proceedings, convictions and sentencing or other dispositions. The restitution contemplated here would be, for instance, imposed as a condition of probation. In any event, this latter restriction necessarily is concerned with criminal proceedings and we do not address the prospective or retroactive application of any Proposition 8 statutes implementing this mandate requiring restitution in criminal proceedings resulting in a conviction.

"The first paragraph of [article I,] section 28(b) contemplates rights of restitution in civil proceedings. The Legislature did not enact new causes of action to implement these rights of restitution. Section 1024.1 simply provides for the award of attorney's fees to a plaintiff who prevails in an action to recover losses occasioned by the commission of a felony by a convicted defendant." Although this analysis of Proposition 8 was offered in *Wood* in the context of deciding section 1021.4 should be applied retroactively to proceedings instituted before the effective date of the statute that had not been reduced to final judgment, we find it also is dispositive of the issue before us. The language "innocent victims" (Cal. Const., art. I, § 28, subd. (a)) is used when Proposition 8 concerns itself with criminal proceedings. When the initiative talks of restitution rights in the civil context it uses less restrictive language: "all persons who suffer losses as a result of criminal activity." (Cal. Const., art. I, § 28, subd. (b).)[5] Thus, although a court may consider the conduct of a plaintiff in exercising its discretion, we conclude the language of Proposition 8 does not preclude an award of attorney's fees under section 1021.4 to those who are not "innocent victims."

[5]Even when the initiative discusses restitution in the criminal arena, it does not limit restitution to innocent victims, but instead employs rather expansive language: "Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or

Moreover, in *Wood, supra,* 167 Cal.App.3d at page 779, we held a victim's fault was among the factors to be considered by the trial court in exercising its discretion to award attorney fees under section 1021.4, along with the convicted person's malice as opposed to negligence, the existence of a contingency fee between victim and counsel and "the usual factors employed in the fixing of fees." Thus, the fault of Sommers in the collision, or even his criminal behavior, is not a bar to recovery of attorney's fees under section 1021.4. It, under the teaching of *Wood,* is merely a factor for the trial court to consider in its discretion to award such fees. As we said in *Wood,* "Section 1021.4 implements this [constitutional] restitution right by including an award of attorney's fees to such persons who prevail in an action for damages against the felon-defendant." (167 Cal.App.3d at p. 779.) By virtue of the stipulated judgment, Sommers prevailed in an action for damages against Erb, a felon-defendant. Therefore, upon proper motion, Sommers was entitled to reasonable attorney fees, unless the trial court, in its discretion, concluded otherwise.

## II

■ The Erbs contend the trial court abused its discretion in awarding attorney fees in the requested amount because (1) the felony of which Peter Erb was convicted did not involve malice, (2) Sommers was not an innocent victim and (3) Sommers did not meet his burden of proving the requested amount based on a contingency agreement was reasonable. We disagree, finding no abuse of discretion.

First, the Erbs argue the nature of Erb's felony conviction should be a factor against awarding attorney fees since the crime did not involve malice. We are not persuaded. Nothing in the language of section 1021.4 suggests that attorney fees should be offered only in felonies that involve malice. What section 1021.4 and the restitution provisions of Proposition 8 seek to address are felonies that cause injuries to other persons. By the very terms of the statute, Vehicle Code section 23153 (causing bodily injury while driving under the influence) is such a crime. The violation of Vehicle Code section 23153 in this case was a felony because of Erb's prior convictions. (Veh. Code, § 23190.) Thus, it appears to us this was the very sort of crime that the electorate in enacting Proposition 8 and the Legislature in passing section 1021.4 intended to cover.

As to Sommers's lack of innocence or comparative negligence in the accident, we note the parties stipulated to a judgment, which recited in part:

disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary." (Cal. Const., art. I, § 28, subd. (b).)

"IT Is Hereby Stipulated . . . that judgment shall be entered in favor of the Plaintiff, JACK SOMMERS, and against the Defendants, PETER ERB and JOAN ERB, in the amount of One Hundred Fifteen Thousand ($115,000.00) Dollars, plus attorney fees in the amount of _____ and other costs in the amount of _____ as taxed by the Court." The stipulated judgment is silent on the issue of comparative negligence. In our view it would be entirely reasonable for the trial court to take the stipulated judgment at face value and to conclude the parties agreed to settle the case without attributing fault to Sommers.

With respect to the reasonableness of the requested amount of attorney fees, we note that in *Serrano* v. *Priest* (1977) 20 Cal.3d 25, 48, footnote 23 [141 Cal.Rptr. 315, 569 P.2d 1303], the California Supreme Court stated:

" 'The starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorney, must be a calculation of the attorney's services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts.' [Citation.]"

Here, of course, the fee request was based on a contingency fee arrangement between Sommers and his counsel. As we stated in *Wood, supra,* 167 Cal.App.3d at pages 779 to 780, contingent fee contracts are usual in personal injury cases and a proper factor for the trial court to consider in awarding attorney fees. In any event, because of the contingency fee arrangement there are no exact time sheets for Sommers's counsel. However, in a declaration supplied to the trial court, counsel estimated he spent between 130 and 150 hours on the case. In support of this estimate, counsel outlined various tasks and procedures he performed in preparing the case for trial. Counsel also declared his hourly billing rate when he does bill clients is $250. Using these figures, an estimate of the billable fees owed on the case ranged from $32,500 to $37,500. We note the top end of the range is only $833 less than the amount requested under the contingency fee arrangement and awarded by the court.

*Serrano, supra,* 20 Cal.3d 25, 49, is again instructive: "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' [Citations.]"

Where a trial court has discretionary power to decide an issue, the exercise of discretion will not be disturbed unless it is abused. An appellate court cannot substitute its own view as to the proper decision. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 275, p. 286.)

"To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice." (*Brown v. Newby* (1940) 39 Cal.App.2d 615, 618 [103 P.2d 1018].) We do not find any abuse of discretion here.

Nor do we find the trial court failed to make an adequate record demonstrating that it exercised its discretion. The trial court reviewed the Erbs' moving papers for their motion to tax costs, the opposition to the motion to tax costs by Sommers and the reply by the Erbs to Sommers's opposition. The trial court conducted a hearing on the motion to tax costs, allowing counsel to argue their respective positions. The trial court issued an order that recited in pertinent part:

"On proof made to the satisfaction of the Court, and being fully advised in the premises, the Court finds that the requirements of *Code of Civil Procedure* section 1021.4 have been met and the amount of attorneys' fees set forth on Plaintiffs' Memorandum of Costs are reasonable and proper."

Finally, the Erbs argue that based on the contingency fee agreement, the attorney fee award in this case should be limited to $5,000 or one-third of the $15,000 actually recovered by Sommers pursuant to the covenant not to execute. The Erbs acknowledge this document was not before the trial court, attributing their omission to file the document with the court as an inadvertent act. The merits of this excuse need not concern us.

"It is elementary that an appellate court is confined in its review to the proceedings which took place in the trial court. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 250, p. 256.) Accordingly, when a matter was not tendered in the trial court, 'It is improper to set [it] forth in briefs or oral argument, and [it] is outside the scope of review.' (*Ibid.*)" (*Bach v. County of Butte* (1989) 215 Cal.App.3d 294, 306 [263 Cal.Rptr. 565].)

## DISPOSITION

Affirmed.

Wiener, Acting P. J., and Froehlich, J., concurred.