[No. G013206. Fourth Dist., Div. Three. Nov. 30, 1993.]

GEORGE BAKER, Plaintiff and Appellant, v.
MID-CENTURY INSURANCE COMPANY, Defendant and Respondent.

## COUNSEL

Barnard F. Klein for Plaintiff and Appellant.

Hollins, Schechter & Feinstein, Kenneth C. Jones and Marc Feinstein for Defendant and Respondent.

## OPINION

**SONENSHINE, J.**—George Baker appeals from dismissal of his action after the court sustained without leave to amend the demurrer of Mid-Century Insurance Company to Baker's first amended complaint. Baker sought to hold Mid-Century liable for payment of attorney fees he incurred in prosecuting a personal injury action against Mid-Century's insured, Bruce Thompson. He alleged the prior action was settled for (1) a stipulated judgment against Thompson, (2) payment to Baker of the $15,000 limits of the Mid-Century policy, (3) a reservation of Baker's right to proceed against Thompson to recover attorney fees pursuant to Code of Civil Procedure section 1021.4,[1] and (4) an assignment to Baker of Thompson's rights under the policy. He alleged that after the settlement, the court granted his section 1021.4 motion to recover $107,000 in attorney fees as costs. He claimed Mid-Century refused to honor its policy obligation to pay all costs of suit for which Thompson would be liable. He alleged the insurer's refusal to pay constituted a breach of the express terms of the insurance contract and of the implied covenant of good faith and fair dealing.

■ We affirm the judgment in favor of Mid-Century. In doing so, we hold an insurer has no obligation to pay attorney fees awarded to a victim of

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

the insured's felonious conduct pursuant to section 1021.4. The risk of liability for such fees is uninsurable.

## Discussion

The settlement agreement incorporated into Baker's first amended complaint provides, in relevant part, "Plaintiff's right to proceed pursuant to *Code of Civil Procedure* Section 1021.4 for an Order in favor of Plaintiff . . . and against Defendant, BRUCE ALAN THOMPSON, only, for attorney's fees is preserved. Plaintiff . . . shall grant to Defendant . . . a covenant not to execute the Judgment as to any attorney's fees obtained pursuant to said Motion . . . in exchange for an Assignment by [defendant] of [his] rights under his insurance policy with MID CENTURY INSURANCE COMPANY . . . ." In another provision of the settlement agreement, Baker expressly waived his right to costs of suit *except* as recoverable under section 1021.4. For purposes of our review, we assume Baker adequately reserved his right to recover statutory attorney's fees against Thompson, and Thompson assigned his policy rights to Baker. We need not analyze Thompson's rights under the policy: We need only decide whether Baker is barred from recovering section 1021.4 fees as a matter of law.

Section 1021.4 provides: "In an action for damages against a defendant based upon that defendant's commission of a felony offense for which that defendant has been convicted, the court may, upon motion, award reasonable attorney's fees to a prevailing plaintiff against the defendant who has been convicted of the felony." In *Wood* v. *McGovern* (1985) 167 Cal.App.3d 772 [213 Cal.Rptr. 498], the court commented on the purpose of the Victims' Bill of Rights, the progenitor of section 1021.4: "The preamble (Cal. Const., art. I, § 28, subd. (a)) recites the rights of victims pervade the criminal justice system. The first pillar encompasses: '. . . not only the right to restitution from the wrongdoers for financial losses suffered as a result of criminal acts' and the second pillar describes: '. . . but also *the more basic expectation that persons who commit felonious acts causing injury to innocent victims will be appropriately detained in custody, tried by the courts, and sufficiently punished so that the public safety is protected and encouraged as a goal of highest importance.*'" (167 Cal.App.3d at p. 777, italics added.)

Recently, in *Vaillette* v. *Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680 [23 Cal.Rptr.2d 807], we dealt with a situation analogous to the one presented in this appeal. There, as here, the plaintiff accepted a payment of policy limits in exchange for settlement of a personal injury action against the insured. The plaintiff then attempted to recover from the insurer fees awarded under section 1021.4, and, upon the insurer's rejection of the claim,

sued under various theories, including breach of the covenant of good faith and fair dealing. Affirming the trial court's dismissal of the action after sustaining the insurer's demurrer without leave to amend, we concluded the settlement agreement neither gave nor reserved to the plaintiff the right to recover further moneys from the insurer. (*Vaillette* v. *Fireman's Fund Ins. Co., supra*, 18 Cal.App.4th 680, 691.)

Although the language of the settlement agreement in *Vaillette* was dispositive, we noted in passing: "California Constitution, article I, section 28, subdivision (b) (the Victims' Bill of Rights) states the 'unequivocal intention' of the People of the State of California that persons injured by criminal activity will obtain restitution for losses *from the persons convicted of the causative crimes*. Section 1021.4 authorizes the court to award reasonable attorney fees to a prevailing plaintiff *against the defendant convicted of the felony that has caused the plaintiff's loss*. 'Restitution . . . may serve the salutary purpose of making a criminal understand that he [or she] has harmed not merely society in the abstract but also individual human beings, and that he [or she] has a responsibility to make them whole.' [Citation.] The purpose to be achieved by section 1021.4 would be defeated if the felony drunk driver could pass the attorney fees penalty along to his or her insurer." (*Vaillette* v. *Fireman's Fund Ins. Co., supra*, 18 Cal.App.4th 680, 689, fn. 7.) That dicta serves as a solid foundation for our holding here that the risk of liability for attorney fees under section 1021.4 is uninsurable.

*California Casualty Management Co.* v. *Martocchio* (1992) 11 Cal.App.4th 1527 [15 Cal.Rptr.2d 277] provides further support for our conclusion. That case involved sanctions awarded under section 128.5 against the plaintiff in a malicious prosecution action. The court observed Insurance Code section 533 "preclude[s] insurance coverage, as a matter of public policy, for a wrongdoer from his [or her] act of wrongdoing [citation]; or for fines or restitution imposed as a result of a criminal conviction . . . ." (11 Cal.App.4th at p. 1533.)

The court rejected plaintiff's argument that because the policy specifically covered malicious prosecution claims, it should be interpreted to cover "an analogous claim for court-imposed sanctions." (*California Casualty Management Co.* v. *Martocchio, supra*, 11 Cal.App.4th 1527, 1534.) "We are . . . dealing here with court-imposed sanctions in an action brought by Martocchio, the insured. While arguably sanctions may serve compensatory purposes similar to those of a malicious prosecution action [citation], sanctions are often imposed and calculated without regard to the need to compensate the opposing party, but for the purpose of deterrence [citation]. . . . This deterrence function would obviously be vitiated if a litigant could

simply engage in bad faith tactics without fear of the consequences, by shifting any court-imposed sanctions onto his [or her] insurer. [Citation.]" (*Id.* at pp. 1534-1535.)

The court also rejected the plaintiff's argument that "providing insurance coverage for a sanctions award would serve to increase the compensation available to parties damaged by frivolous lawsuits." (*California Casualty Management Co.* v. *Martocchio, supra,* 11 Cal.App.4th 1527, 1537.) It noted: "Any marginal benefit to be achieved by providing a solvent insurer, as a target behind a litigant who is too impecunious to pay sanctions but not too impecunious to have insurance, is well outweighed by the loss of deterrence which would occur if parties believed they could engage in spiteful and frivolous litigation without worrying about any financial consequences to themselves. [Citation.] We reject an extension of the scope of insurance coverage so as to foist upon the insurers of this state a duty to respond in damages for the bad faith frivolous litigation conducted by their insureds in California courts." (*Ibid.*)

The rationale underlying the *Martocchio* court's decision applies with equal force here. As a matter of express public policy, insurance is available to cover the risk of the insured's negligence, but not the risk of his or her willful act. (Ins. Code, § 533.) Civil Code section 1668 provides, in relevant part: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his [or her] . . . violation of law, whether willful or negligent, are against the policy of the law." Moreover, as this court noted in *State Farm Fire & Cas. Co.* v. *Superior Court* (1987) 191 Cal.App.3d 74 [236 Cal.Rptr. 216], an insurer is not liable for punitive damages awarded against its insured, and there is "[n]o conceivable justification . . . for allowing an individual to pass on" to the insurer liability for restitution ordered as punishment in a criminal case. (*State Farm Fire & Cas. Co.* v. *Superior Court, supra,* 191 Cal.App.3d 74, 77-78.)

Baker argues that because the drunk driver's insurance policy provides for defense and indemnification against the victim's damage claims, it should be interpreted to cover the victim's claim against the insured for section 1021.4 attorney fees as well. The argument ignores a fundamental difference between the claims. It is the *negligence* of the insured, not his or her intoxication, that gives rise to the insurer's duty to indemnify the insured for the victim's damages. But it is the *felony conviction* of the insured, and *only* the felony conviction, that allows the victim to claim entitlement to attorney's fees under section 1021.4. In the case of drunk driving, the felony conviction requires proof (1) the defendant drove a vehicle while under the influence of an alcoholic beverage, (2) concurrently committed an unlawful act or neglected a legal duty in driving, and (3) by that act or omission caused injury

to a third person. (Veh. Code, § 23153; *People* v. *Ferrara* (1988) 202 Cal.App.3d 201, 206 [248 Cal.Rptr. 311].) In light of the statutory and common law noted above, it is appropriate to require the insurer of a drunk driver to pay damages to the injured claimant, but exonerate the insurer from liability for payment of attorney fees allowed solely because of the insured's felony conviction.

We recognize there will be occasions when the drunk driver will be judgment-proof, and, in such cases, section 1021.4 will accomplish neither of its purposes: The victim will not be compensated, and the felon will not be deterred. But it is our province to follow the law, not to determine its wisdom.[2] And as a matter of law, no contract of insurance may cover the risk of liability for attorney fees under section 1021.4 because the prerequisite to such an award is the insured's felony conviction.

The judgment is affirmed. Mid-Century shall recover its costs on appeal.

Wallin, Acting P. J., and Moore (E. C.), J.,* concurred.

---

[2]We note in *Sommers* v. *Erb* (1992) 2 Cal.App.4th 1644 [4 Cal.Rptr.2d 52], an award of section 1021.4 attorney fees was affirmed, even though the victim of the drunk driver was himself driving under the influence when the accident occurred. The *Sommers* court observed the statute does not require an "innocent" victim in the context of civil proceedings. The victim's fault, or even his or her criminal conduct, is simply a factor to be considered by the trial court in its discretion to award fees. (2 Cal.App.4th at p. 1650.)

*Judge of the Orange Superior Court sitting under assignment by the Chairperson of the Judicial Council.