49 Cal.Rptr.3d 917 (2006)
143 Cal.App.4th 1338
Jack COMBS, Plaintiff and Appellant,
v.
STATE FARM FIRE & CASUALTY COMPANY et al., Defendants and Respondents.
No. A111813.
Court of Appeal of California, First District, Division Three.
October 16, 2006.
*918 Jack Combs, in pro. per.
Pierce & Shearer, Andrew F. Pierce [Retained], Palo Alto, for plaintiff and appellant.
*919 Chapman, Popik & White, Mark A. White, Carol D. Quackenbos, San Francisco, for defendants and respondents.
POLLAK, J.
Plaintiff Jack Combs appeals from an adverse summary judgment rejecting his claim against State Farm Fire & Casualty Company and State Farm General Insurance Company[1] (collectively, State Farm) for its refusal to reimburse him for the attorney fees he was ordered to pay the prevailing party in an earlier action against him for housing discrimination. Combs does not dispute that Insurance Code section 533 (section 533) prohibits State Farm from indemnifying him for the compensatory and punitive damages for which he was held liable in the discrimination suit. However, he disputes the trial court's ruling that section 533 also precludes reimbursement of the plaintiff's attorney fees for which he was held liable, that were covered by a supplementary payments provision of his insurance policy. We shall affirm.

Background
State Farm provided Combs with a defense, under a reservation of rights, to a complaint filed in federal district court by Fair Housing of Marin (FHOM) charging Combs with racial discrimination in the management of a San Rafael apartment complex in violation of federal and state law.[2] In March 1999, the district court entered an order striking Combs' answer and entering his default, based on findings that his "failure to produce documents was not only the `fault' of defendant, but was a willful and bad faith attempt to obfuscate the discovery process and mislead FHOM and the court," that he had "not only failed to produce documents as ordered, but that he misrepresented to both counsel and to the court the very existence of such documents," that his "gamesmanship" had caused prejudice, and that in view of prior warnings no lesser or alternative sanction was appropriate. Following an evidentiary hearing, the court found "direct evidence of racial animus . . . amply present on this record" and "the record on liability" to be "damning," and awarded plaintiff compensatory and punitive damages. Thereafter, following the receipt of a report and recommendation from a magistrate judge, the district court awarded FHOM some $508,000 in attorney fees as the prevailing party pursuant to the provisions of both the underlying federal and state statutes.[3] The judgment was affirmed in all respects by the Ninth Circuit Court of Appeals. (Fair Housing of Marin v. Combs (9th Cir.2002) 285 F.3d 899, 900.) Thereafter, the judgment was augmented by attorney fees of an additional $131,000 incurred on appeal and in opposing a petition for a writ of certiorari.
Combs was insured by a State Farm "Apartment Policy" that provided comprehensive business liability coverage for bodily injury, property damage, personal injury and advertising injury as defined in the policy. The policy imposed on State Farm the "right and duty to defend any claim or suit seeking damages payable under this *920 policy," even if groundless. The policy also contained a supplementary payments provision, which provided that "[i]n addition to the Limit of Insurance, we will pay, with respect to any claims or suit we defend: . . . [¶] 5. all costs taxed against the insured in the suit . . . ." Under a full reservation of rights, State Farm underwrote the defense of the action through the denial of certiorari by the United States Supreme Court and the entry of the augmented judgment for costs and attorney fees. At various times during the course of the litigation, Combs demanded that State Farm settle the claims against him but State Farm consistently refused to pay any amount in settlement, maintaining that it was not obligated to provide indemnity for numerous reasons, including the impact of section 533. Following the entry of judgment and State Farm's continuing refusal to pay any portion of the judgment, Combs brought this action for breach of the insurance contract. Combs eventually moved for summary adjudication that State Farm is obligated to pay "the costs taxed against the insured in the [federal action], including the plaintiff's trial and appellate attorney fees" and State Farm filed cross-motions for summary judgment. Following argument, the trial court denied Combs' motion and granted summary judgment to State Farm, concluding that "Combs' adjudicated liability for intentional race discrimination in the FHOM action precludes insurance coverage for the default judgment, including the award of attorneys fees, under section 533." Combs timely appealed from the resulting adverse judgment.

Discussion
Section 533 provides that "[a]n insurer is not liable for a loss caused by the wilful act of the insured . . ."[4] This provision is "`an implied exclusionary clause which by statute is to be read into all insurance policies.'" (J. C. Penney Casualty Ins. Co. v. M.K. (1991) 52 Cal.3d 1009, 1019, 278 Cal.Rptr. 64, 804 P.2d 689.) "As a result, the parties to an insurance policy cannot contract for such coverage." (Downey Venture v. LMI Ins. Co. (1998) 66 Cal.App.4th 478, 500, 78 Cal.Rptr.2d 142 (Downey).) The section "is subject to the rules of statutory construction, not to the rules governing contract interpretation, and must be construed in order to effect its purpose." (California Casualty Management Co. v. Martocchio (1992) 11 Cal.App.4th 1527, 1531, 15 Cal.Rptr.2d 277 (Martocchio).) "One enunciated purpose of . . . section 533 is to discourage willful torts, by denying coverage for willful wrongs." (Martocchio, supra, at pp. 1531-1532, 15 Cal.Rptr.2d 277.)
There is no doubt that intentional discrimination, such as the district court found Combs to have committed, is willful conduct for which section 533 precludes indemnification. (Melugin v. Zurich Canada (1996) 50 Cal.App.4th 658, 664-665, 57 Cal.Rptr.2d 781; Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co. (1993) 14 Cal. App.4th 1595, 1603-1604, 18 Cal.Rptr.2d 692.) Combs does not pursue a claim to be indemnified for the compensatory and punitive damages for which he was held liable, implicitly acknowledging that coverage for such liability is barred by section 533. And State Farm provided Combs a defense to the claim against him, and makes no contention here that it was not obligated to do so. (Compare Melugin v. Zurich Canada, supra, at pp. 665-666, 57 *921 Cal.Rptr.2d 781 with B & E Convalescent Center v. State Compensation Ins. Fund (1992) 8 Cal.App.4th 78, 99-102, 9 Cal. Rptr.2d 894.) Combs asserts that since State Farm did defend the action, the supplementary payments provision of his policy requires it to reimburse him for the attorney fees that were taxed against him as costs of the action.
The trial court agreed with State Farm that there are two reasons for which section 533 bars it from paying these fees. The second of these reasons relied on Martocchio, supra, 11 Cal.App.4th 1527, 15 Cal.Rptr.2d 277, which held that section 533 precludes coverage for monetary sanctions imposed for bad faith litigation misconduct. The trial court concluded that "section 533 also and independently bars coverage for the attorneys fees portion of the FHOM default judgment by reason of the terminating sanction imposed for Combs' deliberate discovery abuse and obstruction." The court felt that "although the attorneys fees awarded against Combs were not directly imposed as a monetary sanction for his litigation abuse, they were the direct and judicially intended result of the more drastic sanction that was imposed, namely the striking of Combs' answer to the complaint and entry of his default." We have some misgivings about this rationale, since the sanction that the district court imposed was only the striking of Combs' answer and the entry of a default. The court determined from the well-pled allegations of the complaint and evidence in the record that FHOM was entitled to prevail on the merits of its claim and under both the controlling state and federal statutes this determination entitled FHOM to its attorney fees. While unlikely, the district court might have found, despite the entry of Combs' default, that there was no basis for FHOM's claim of housing discrimination, in which case no attorney fees would have been awarded. Thus, it is doubtful that the attorney fees can be regarded as the "intended result" of the discovery sanction. Combs became liable for the attorney fees because he was found, albeit without a defense, to have engaged in willful racial discrimination.
"Combs' adjudicated liability for intentional race discrimination in the FHOM action" is the first reason for which the trial court held that section 533 precludes indemnification of the attorney fee award, and we agree fully with this conclusion. Relying in large part on the seminal decision of Gray v. Zurich Insurance Co. (1966) 65 Cal.2d 263, 277-278, 54 Cal.Rptr. 104, 419 P.2d 168, Combs argues that section 533 precludes only indemnification of damages awarded against an insured for willful misconduct, but does not eliminate an insurer's commitment to provide a defense against such accusations. Further, he argues, "the payment of costs taxed against the insured `is a function of the insurer's defense obligation, not its indemnity obligation,'" for which proposition he cites Prichard v. Liberty Mutual Ins. Co. (2000) 84 Cal.App.4th 890, 911-912, 101 Cal.Rptr.2d 298 and other cases which so hold. (San Diego Housing Com. v. Industrial Indemnity Co. (2002) 95 Cal.App.4th 669, 691-693, 116 Cal.Rptr.2d 103; Insurance Co. of North America v. National American Ins. Co. (1995) 37 Cal.App.4th 195, 206-207, 43 Cal.Rptr.2d 518; Cutler-Orosi Unified School Dist. v. Tulare County School etc. Authority (1994) 31 Cal.App.4th 617, 632, 37 Cal.Rptr.2d 106.)[5]
*922 We do not question the first premise of Combs' argument, that section 533 does not necessarily preclude insurance coverage for the defense of an action in which the insured ultimately is found liable for willful misconduct. (Downey, supra, 66 Cal.App.4th at pp. 506-510, 78 Cal.Rptr.2d 142; Melugin v. Zurich Canada, supra, 50 Cal.App.4th at pp. 664-665, 57 Cal.Rptr.2d 781; B & E Convalescent Center v. State Compensation Ins. Fund, supra, 8 Cal. App.4th at pp. 92-93, 9 Cal.Rptr.2d 894.) But the fact that the supplemental payment of costs taxed against the insured is viewed as arising from the insurer's defense obligation, and under the supplementary payments provision of the insurance policy arises with respect to claims that the insurer defends, does not mean that section 533 permits the insurer to indemnify the insured for such costs and fees. As the trial court correctly observed, none of the cases cited by Combs so holds, or even considers the application of section 533. Rather, each deals in one context or another with the interpretation of policy provisions affecting coverage.[6]
As indicated above, section 533 prohibits coverage for any "loss" caused by the willful misconduct of the insured. Liability for the adversary's costs and attorney fees in this case is a loss caused by and incurred as a result of the insured's intentional racial discrimination. Attorney fee awards may not normally be considered as "damages" in that they do not compensate claimants for the injury for which they brought suit (San Diego Housing Com. v. Industrial Indemnity Co., supra, 95 Cal.App.4th at p. 689, 116 Cal. Rptr.2d 103; Cutler-Orosi Unified School Dist. v. Tulare County School etc. Authority, supra, 31 Cal.App.4th at pp. 631-632, 37 Cal.Rptr.2d 106), nor may they ordinarily be awarded for the purpose of punishing the defendant (Simpson v. Sheahan (7th Cir.1997) 104 F.3d 998, 1003; Corder v. Gates (9th Cir.1991) 947 F.2d 374, 383). Nonetheless, the term "loss" is not limited to damages. (See, e.g., Essex Ins. Co. v. Five Star Dye House, Inc. (2006) 38 Cal.4th 1252, 1255, 1258, 45 Cal.Rptr.3d 362, 137 P.3d 192; County of San Diego v. Ace Property & Casualty Ins. Co. (2005) 37 Cal.4th 406, 417-421, 33 Cal. *923 Rptr.3d 583, 118 P.3d 607; CDM Investors v. Travelers Casualty & Surety Co. (2006) 139 Cal.App.4th 1251, 1262-1266, 43 Cal.Rptr.3d 669.) While providing a legal defense pursuant to the terms of an insurance policy does not constitute indemnification for a loss (Gray v. Zurich Insurance Co., supra, 65 Cal.2d at p. 277, 54 Cal.Rptr. 104, 419 P.2d 168), providing a defense is hardly the same as indemnifying the insured for the other party's costs and attorney fees that the insured becomes obligated to pay only as the result of being found liable for the underlying misconduct. As the court observed in Gray, providing an insured with a defense "does not offend the statute [section 533, and Civil Code section 1668]; a contract to defend an assured upon mere accusation of a wilful tort does not encourage such wilful conduct." (Gray v. Zurich Insurance Co., supra, at p. 278, 54 Cal.Rptr. 104, 419 P.2d 168.) But supplementary coverage for the costs incurred by the prevailing party is not a necessary component of providing the insured with a defense, the obligation to provide which "is discharged when the action is concluded." (Buss v. Superior Court (1997) 16 Cal.4th 35, 46, 65 Cal.Rptr.2d 366, 939 P.2d 766.) Like the duty to indemnify, the obligation to pay costs taxed to the insured "arises only after liability is established." (Ibid.) The attorney fees of the opposing party become payable only if and when the insured has been found liable, in this case as a statutory consequence of its liability. Permitting the wrongdoer to insure against this consequence would, no less than permitting the wrongdoer to be indemnified for the damages he or she must pay as a result of willful misconduct, undercut the public policy behind section 533 and permit the offender to avoid what may be a significant consequence of the wrongdoing. (See Downey, supra, 66 Cal. App.4th at p. 511, 78 Cal.Rptr.2d 142; Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co., supra, 14 Cal.App.4th at p. 1604, 18 Cal.Rptr.2d 692; Martocchio, supra, 11 Cal.App.4th at p. 1535, 15 Cal.Rptr.2d 277.) Thus, despite its contractual agreement to pay these costs, section 533 prohibits State Farm from doing so. (Id. at p. 1535, 15 Cal.Rptr.2d 277 ["section 533 bars insurance recovery for any willful actsas a matter of statutory, not contractual, interpretation"].)[7]
There is some logic to Combs' argument that reading section 533 to preclude coverage for the attorney fees he was ordered to pay FHOM may to some extent contravene the purpose of the attorney fee provisions, "to encourage meritorious civil rights actions by ensuring reasonable compensation for victorious plaintiffs' attorneys." (Corder v. Gates, supra, 947 F.2d at p. 383.) But this argument is similar to that rejected in Martocchio, supra, 11 Cal.App.4th at page 1537, 15 Cal. Rptr.2d 277: "Martocchio argues that providing insurance coverage for a sanctions award would serve to increase the compensation available to parties damaged by frivolous lawsuits. Any marginal benefit to be achieved by providing a solvent insurer, as a target behind a litigant who is too impecunious to pay sanctions but not too impecunious to have insurance, is well out-weighed by the loss of deterrence which would occur if parties believed they could engage in spiteful and frivolous litigation without worrying about any financial consequences *924 to themselves." This same conclusion has been reached in refusing to permit an insurer to provide coverage for attorney fees awarded under Code of Civil Procedure section 1021.4, to a plaintiff who has prevailed based on the commission of a felony for which the defendant has been convicted. (Baker v. Mid-Century Ins. Co. (1993) 20 Cal.App.4th 921, 25 Cal. Rptr.2d 34.) "As a matter of express public policy, insurance is available to cover the risk of the insured's negligence, but not the risk of his or her willful act." (Id. at p. 925, 25 Cal.Rptr.2d 34.) The court in Baker cited both section 533 and Civil Code section 1668, which provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own . . . willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." In light of this statutory and common law policy, the court concluded that "it is appropriate to . . . exonerate the insurer from liability for payment of attorney fees allowed solely because of the insured's felony conviction." (Baker v. Mid-Century Ins. Co., supra, 20 Cal.App.4th at p. 926, 25 Cal.Rptr.2d 34;[8] see also Vaillette v. Fireman's Fund Ins. Co. (1993) 18 Cal.App.4th 680, 689, 22 Cal.Rptr.2d 807, fn. 7 ["The purpose to be achieved by [Code Civ. Proc., §] 1021.4 would be defeated if the felony drunk driver could pass the attorney fees penalty along to his or her insurer"].) Thus, while denying insurance coverage may in some instances limit the ability of victims of intentional misconduct to collect attorney fees they are awarded, the public policy embodied in section 533 requires that the burden of paying such fees be borne by the intentional wrongdoer and not by the wrongdoer's insurance carrier.
Finally, Combs' attempt to relitigate the adverse findings made by the district court in the underlying federal proceedings is to no avail. We shall not reevaluate the district court's determinations that he engaged in willful discovery abuses for which his default was entered (although, as indicated above, we do not rely on that determination in upholding the judgment below) and that he engaged in intentional racial discrimination. Combs made no argument in the trial court that section 533 is inapplicable because the district court's findings were either unsupported or not conclusive. Hence, any such contention has been waived. (Bhatt v. State Dept. of Health Services (2005) 133 Cal.App.4th 923, 932-933, 35 Cal.Rptr.3d 335.)
In view of these conclusions it is not necessary to consider other arguments which State Farm advances in support of the judgment below.

Disposition
The judgment is affirmed.
McGUINESS, P.J., and PARRILLI, J., concur.
NOTES
[1] Like the trial court, we do not reach the issue raised below as a separate ground in support of the motion of State Farm General Insurance Company that it is not the insurer bound by the insurance policy in question.
[2] The complaint alleged causes of action under the federal Fair Housing Act (42 U.S.C. §§ 3604, 3617), the Civil Rights Act of 1966 (42 U.S.C. § 1982), the California Fair Employment and Housing Act (Gov.Code, § 12955), and the Unfair Business Practices Act (Bus. & Prof.Code, §§ 17200, 17203). The district court found that "imposition of liability is proper on all counts."
[3] (42 U.S.C. § 1988; Code Civ. Proc., § 1021.5; Gov.Code, § 12989.2.)
[4] The provision in full reads: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."
[5] Combs also argues, somewhat inconsistently, that "State Farm was required to make supplementary payments whether or not it has a duty to defend." In either event, the critical point is that the reason for which State Farm need not reimburse Combs for the attorney fees he was required to pay the prevailing party is not that the explicit terms of the policy do not call for such reimbursement, but that section 533 prohibits it.
[6] In Prichard v. Liberty Mutual Ins. Co., supra, 84 Cal.App.4th at pages 911-912, 101 Cal. Rptr.2d 298, the court held that an insurer was obligated under the terms of a supplementary payments provision to pay all costs taxed against its insured in a mixed action (that is, an action in which the insured was sued for claims both potentially covered and not potentially covered by the insurance policy) that it defended, whether or not the insurer was eventually determined to be entitled to reimbursement of the cost of defending an uncovered claim. In San Diego Housing Com. v. Industrial Indemnity Co., supra, 95 Cal.App.4th at pages 689-693, 116 Cal. Rptr.2d 103, the court held a supplementary payments provision was intended solely for the benefit of the insured and in the absence of an assignment of a failure to defend claim could not be enforced by a judgment creditor as a policy benefit. In Insurance Co. of North America v. National American Ins. Co., supra, 37 Cal.App.4th 195, 43 Cal.Rptr.2d 518, an action between two insurers disputing the allocation of liability of a common insured, the court upheld the allocation of an amount paid in settlement of certain claims to the supplementary payments section of one of the policies rather than to a reduction of the policy limits of the policy (id. at pp. 206-207, 43 Cal.Rptr.2d 518). In Cutler-Orosi Unified School Dist. v. Tulare County School etc. Authority, supra, 31 Cal.App.4th at pages 630-633, 37 Cal.Rptr.2d 106, the court held that the costs of reimbursing plaintiffs who had brought an action under the federal Voting Rights Act of 1965 (42 U.S.C. § 1973 et seq.) for their attorney fees did not constitute "damages" covered by the terms of the applicable insurance policy, and gave rise to no duty to defend.
[7] For this reason, cases cited by Combs from other jurisdictions are inapposite because they are based solely on the interpretation of policy provisions and do not consider the effects of a statute such as section 533 upon the obligations of the insurer. (Littlefield v. McGuffey (7th Cir.1992) 979 F.2d 101; Mutual of Enumclaw v. Harvey (1989) 115 Idaho 1009, 772 P.2d 216.)
[8] Contrary to Combs' assertion, the holding in Baker v. Mid-Century Ins. Co., supra, 20 Cal.App.4th 921, 25 Cal.Rptr.2d 34, has not been affected by the decisions in People v. Bernal (2002) 101 Cal.App.4th 155, 123 Cal. Rptr.2d 622 and People v. Jennings (2005) 128 Cal.App.4th 42, 26 Cal.Rptr.3d 709, both of which hold that amounts paid by a defendant's insurer to a crime victim for losses subject to a restitution order apply to reduce the defendant's restitution obligation.