[No. D035239. Fourth Dist., Div. One. Jan. 28, 2002.]

SAN DIEGO HOUSING COMMISSION et al., Plaintiffs and Respondents, v.
INDUSTRIAL INDEMNITY COMPANY, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

670

## COUNSEL

Edwards, Sooy & Byron; Grace, Brandon & Hollis and Thomas W. Byron for Defendant and Appellant.

Detisch & Christensen, Charles B. Christensen and Sean D. Schwerdtfeger for Plaintiffs and Respondents.

## OPINION

HUFFMAN, J.—This case requires us to determine the rights of a judgment creditor of an insured, in an action against an insurer seeking insurance

policy proceeds under Insurance Code[2] section 11580, subdivision (b)(2), to recover under the liability insurance policy's supplementary payments provision (SPP). In this type of action, the judgment creditor is entitled to recover against the insurer "on the policy and subject to its terms and limitations," pursuant to a judgment the creditor had earlier obtained against the insured. We will conclude that the SPP dealing with costs and interest, referring to "all costs taxed against the insured *in any suit defended by the Company* and all interest on the entire amount of any judgment *therein*," should be construed as creating defense rights for the insured that are not enforceable by the judgment creditor of the insured, based on contract principles of third party beneficiary law as applied in the section 11580, subdivision (b)(2) context. (*Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 943-944 [132 Cal.Rptr. 424, 553 P.2d 584] (*Murphy*).)

This is the second appeal arising from the dispute between plaintiffs and respondents San Diego Housing Commission and San Diego Housing Authority (collectively, Housing; respectively, the Commission and the Authority) and the insurer of the general contractor who built a housing project for Housing, Industrial Indemnity Company (IIC). In 1983 through 1984, John B. Reed Construction Co. (JBR or the insured) was the general contractor for a low-income housing project, Calle Primera (the project), built for the Commission on land owned by the Authority. The current dispute concerns financial responsibility for an underlying default judgment for damages for construction defects that Housing obtained against JBR, whom IIC insured under a liability policy. (*Housing Authority of the City of San Diego v. Reed Construction Co.* (Super. Ct. San Diego County, 1992, No. 651235) (the underlying action).)

This follow-up lawsuit was originally tried in 1996, on Housing's claims of entitlement to insurance coverage by IIC of all or a portion of the default judgment in the underlying action. Housing obtained judgment against IIC of over $1 million damages on several theories. IIC appealed, and this court filed its opinion December 10, 1998, reversing the trial court judgment and remanding for retrial on the claims under section 11580, subdivision (b)(2) (Housing as a third party beneficiary of the JBR insurance policy). (*San Diego Housing Com. v. Industrial Indemnity Co.* (1998) 68 Cal.App.4th 526 [80 Cal.Rptr.2d 393] (*SDHC*), a partially published opinion referred to here as the prior opinion, regarding both published and nonpublished portions.) Upon remand, jury trial was held in October 1999 and resulted in special verdicts and judgment in Housing's favor in the amount of $957,212.25 damages, as well as an award of costs of suit.

IIC now appeals the judgment after retrial, chiefly contending the damages award is unsupported on the section 11580, subdivision (b)(2) theory

---

[2]All statutory references are to this code unless otherwise stated.

regarding a particular portion of the policy, the SPP. Further, IIC contends the trial judge erroneously allowed certain evidence to be admitted with respect to Housing's claim that IIC had a duty to defend its insured, JBR, objecting that such evidence was actually impermissible evidence of bad faith claims-handling practices (contrary to the holding of our prior opinion).

In addition, Housing has cross-appealed the judgment on the basis that the trial court erroneously ruled there was no liability coverage for any occurrence of property damage within the 1982-1983 policy period, arising out of plumbing defects (corrosion) at the project. We find the cross-appeal has no merit. However, our interpretation of the SPP requires us to affirm the judgment as modified to reduce the damages awarded only to the $200,000 indemnity portion, while also deleting that part of the costs award to Housing that is based on Code of Civil Procedure section 998. As so modified, the judgment is affirmed.

### Factual and Procedural Background

The background facts of the 1983-1984 construction of the project are set forth in our prior opinion. (*SDHC, supra,* 68 Cal.App.4th at pp. 532-536.) During construction, JBR and its subcontractors created numerous problems, including sloping floors that had to be corrected, concrete that had to be redone, and drainage problems that needed further work. Copper plumbing pipes were installed in backfilled rocky trenches in areas with mildly corrosive soil. The pipes passed pressure tests before project completion. (Later, however, was another story.)

At the outset of construction, JBR was insured by IIC under a comprehensive general liability insurance (CGL) policy that had a three-year term beginning June 11, 1981, and due to end June 11, 1984. A certificate of coverage was issued for this project on March 30, 1983. The policy provided broad form property damage coverage and required an occurrence within the policy period for coverage to attach. Completed operations coverage was provided, and there was an exclusion for property damage to the project occurring during the course of construction. A "Separate Limit Plan" was supplied to provide different policy limits for different types of coverage, although the general policy limit for property damage was $100,000 per occurrence. The SPP dealt with costs taxed against the insured in any suit defended by the company, and interest on an underlying judgment against an insured, as will be more fully described later.

The project was completed and inspected by officials of the City of San Diego in March and April 1984; tenants began moving in beginning April 4,

1984. Beginning in 1989 and 1990, tenants made complaints to Housing concerning defects at the project. According to the underlying construction defect complaint against JBR (filed in 1992), defects at the site included plumbing and drainage problems, door and light fixture problems, uneven floors, cracked stucco, and other problems. Housing's technical services supervisor and maintenance coordinator received complaints and did repairs. Housing notified JBR of the defects in February 1992 and then filed its complaint for damages for construction defects on April 27, 1992.

From February to May 1992, JBR attempted to obtain a defense of the construction defect action from IIC. IIC resisted providing coverage on several grounds. It took the position that the policy had effectively been canceled in March or April 1984 by JBR's principal Reed, and the original expiration date of the policy, June 11, 1984, should not apply. (One of the issues sent back for this retrial was the effective date of cancellation of the policy; prior opn.)[3] However, no defense was provided, and Housing obtained a default judgment against JBR for $1,150,603.92, which included repair costs, relocation costs, and attorney fees and costs (the prior default judgment).

Based on the prior default judgment, Housing brought this action against IIC and related entities. Housing pled a cause of action as a judgment creditor to recover on the policy, subject to its terms and limitations. (§ 11580, subd. (b)(2).)[4] As outlined above, the first jury trial against IIC resulted in a large judgment for Housing, which combined recovery for bad faith theories and the section 11580, subdivision (b)(2) claim. Upon our reversal of that judgment, retrial began in October 1999. The trial court made various rulings designed to implement the policy interpretations set forth in our prior opinion, which we will summarize as follows.

Specifically, our prior opinion upheld the first trial court's interpretation of the Separate Limit Plan, as allowing liability for separate occurrences in separate policy years to be aggregated. That trial court correctly concluded there were two separate annual policy years involved, as a reasonable construction of the policy and the evidence. However, there were also two potential separate coverages for property damage, one for the course of operations performed for the insured (JBR) by independent contractors, and

---

[3]IIC makes no argument here that the jury verdict and judgment were incorrect that the policy had not been effectively canceled before its June 11, 1984 expiration date. That fact is unchallenged.

[4]Eventually a Code of Civil Procedure section 998 offer of $750,000 was made by Housing but rejected by IIC. Subsequently, the trial court awarded costs in part on this basis, because Housing's damages award exceeded the offer amount. (See fn. 9, *post.*)

one for property damage included within the completed operations hazard. Thus, we determined previously that it was a reasonable construction of the policy for the trial court to conclude "that two separate $100,000 limits applied, and for two separate years each, *assuming that it can be shown that occurrences of property damage took place within the policy period.* This interpretation of the separate limit plan [] may remain established in any retrial on remand. . . ." (Prior opn., italics added.)[5]

Further, the trial court in this retrial applied our prior opinion's interpretation of the SPP. The text of that provision states that the insurer will pay, "in addition to the applicable limit of liability: [¶] (a) . . . all costs taxed against the insured *in any suit defended by the Company* and all interest on the entire amount of *any judgment therein* which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon." (Italics added.) We said, "At any further proceedings, the trial court should specify whether such awards properly fall within the scope of the supplementary payments provision, since the underlying action was not in fact '*defended by* the Company . . . .' " (Prior opn.)[6]

At the retrial, the parties extensively disputed how to handle the fact that IIC had not in fact defended the underlying action against JBR, for purposes of the section 11580, subdivision (b)(2) claim. The trial court took the approach of presenting to the jury an advisory issue of whether there was a duty to defend, based on the facts known at the time, and then the court decided the applicability of the SPP as a matter of law. The trial court directed the parties to stay away from any bad faith aspect of the case.

Accordingly, at the retrial, Housing presented extensive evidence about the nature of the construction defects at the project, and when they occurred

---

[5]The basic coverage part of this liability policy provides: "The Company will pay on behalf of the insured all sums *which the insured shall become legally obligated to pay as damages* because of: . . . Coverage B - *property damage to which this insurance applies, caused by an occurrence,* and the *Company shall have the right and duty to defend any suit against the insured* seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements." (Italics added.) As defined by the policy, " 'occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

[6]Pursuant to Housing's request, we have taken judicial notice of its petition for rehearing in the prior appeal, and the order denying that petition. (Evid. Code, §§ 452, subd. (d), 459.) One of the issues raised in the petition was the scope of the SPP provision, but the order denying the petition does not indicate that any further clarification was required at that time.

or were manifested. This was directed toward proving to the jury that there was a duty to defend JBR on IIC's part, due to the potential of coverage under the policy, within the IIC policy period. Housing called as witnesses on the duty-to-defend issue IIC's former claims adjusters Robert Blake and Joe Jenny, as well as JBR's principal, J. Michael Reed. Reed testified about the efforts of JBR to inform IIC of the facts with respect to obtaining coverage. Blake did not recall anything of the coverage dispute, while Jenny described what was in the claims files. In addition, Housing called an expert witness on insurance issues, Thomas Carter, on the duty-to-defend issue based on factual disputes. IIC cross-examined these witnesses and argued its interpretation of their testimony.[7]

The jury was instructed on the elements of the section 11580, subdivision (b)(2) case, and told this was not a bad faith insurance case. It then rendered special verdicts on property damages, tenant relocation, and litigation expenses, as well as an advisory verdict on the duty-to-defend issue as it applied to JBR, the insured. Judgment was entered in which the trial court set forth its findings. First, the court stated, "Two juries have found that defendant Industrial Indemnity Company had a duty to defend the insured J.B. Reed Construction Company in the underlying lawsuit filed by plaintiffs against J.B. Reed Construction Company, decisions with which this Court agrees."[8] It then noted that the prior default judgment against JBR included costs and attorney fees awards in favor of Housing. Next, the court stated, "Had Industrial Indemnity Company ('IIC') not breached its contractual duty to defend, it would have been unquestionably responsible for both the costs and fees awarded against its insured, and additionally for interest on the entire judgment accruing after entry of the judgment and until IIC paid or tendered or deposited in court that part of the judgment that does not exceed the limits of IIC's liability thereon," but no payment had been made. The court then made this key finding: "IIC may not benefit by its breach of duty to defend Reed to the detriment of its insured against whom a judgment has been rendered. *Sanchez v. Truck Insurance Exchange* (1994) 21 Cal.App.4th 1778 [26 Cal.Rptr.2d 812]."

Continuing, the trial court concluded that Housing, as a third party beneficiary of the policy, was entitled to recover under it. Thus, since the

---

[7]As it did in the prior appeal, Housing contends IIC invited any error on the bad faith theory by examining the witnesses and presenting its own theories on that topic. However, it was again appropriate for IIC to present evidence to controvert Housing's claims in that respect. (*Hoel v. City of Los Angeles* (1955) 136 Cal.App.2d 295, 310 [288 P.2d 989].)

[8]We review the judgment, not the trial court's reasoning. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].) The reference to the prior jury's finding is merely superfluous. "Superfluity does not vitiate." (Civ. Code, § 3537.)

jury had determined that JBR's liability to Housing arose out of events covered by the policy in question and within the policy period, Housing was entitled to benefits of the policy under both the Separate Limit Plan and the SPP of the policy. The damages award was made as follows: damages in the aggregate amount of $957,212.25, plus costs of suit, as taxed, in the amount of $116,959.82, plus postverdict interest.[9] This damages award is comprised of the following amounts:

"a. The Court awards property damages pursuant to the subject separate limit plan (Coverage B) for property damage suffered by plaintiffs within one policy year, June 11, 1983, to June 10, 1984, under the policy's separate limit plan involving floor damage and relocation expenses, and improper drainage property damage in the aggregate amount of Two Hundred Thousand Dollars ($200,000.00).

"Pursuant to *Montrose Chemical Corp. v. Admiral Insurance Co.* (1995) 10 Cal.4th 645 [42 Cal.Rptr.2d 324, 913 P.2d 878], this Court finds that property damage arising out of pipe leaks did not occur during a policy period.

"b. Interest on the judgment dated March 15, 1994, as against insured J.B. Reed Construction Company [in the amount of [ ]($1,150,603.92)], is awarded to Plaintiffs to the date of filing of the verdict, October 29, 1999, at the rate of ten percent (10%) per annum, simple interest, a total amount of [ ]$647,169.51, *pursuant to the Supplementary Payments coverage of the CGL policy*;

"c. Costs of [ ]$17,913.19 and attorneys' fees of [ ]$92,129.55 awarded against defendants' insured, are awarded Plaintiffs *pursuant to the Supplementary Payments coverage of the defendants' CGL policy . . . .*" (Italics added.)

IIC appeals, chiefly to challenge the SPP award. Housing cross-appeals the judgment as to the property damage award.

## DISCUSSION

Section 11580 requires that a liability insurance policy issued in California shall contain certain specified provisions, including this one set forth in

[9]The costs of suit award includes an amount attributable to expert witness fees ($81,005.50), pursuant to Code of Civil Procedure section 998, since this damages verdict was greater than the $750,000 offer Housing made to settle the suit before trial. However, our affirmance of the judgment as modified to reduce the damages due to Housing requires the costs award under Code of Civil Procedure section 998 to be stricken, thus reducing the costs of suit figure to $35,950.32.

subdivision (b)(2): "[W]henever judgment is secured against the insured . . . in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

The threshold issue presented in a case brought under section 11580, subdivision (b)(2) is "whether the judgment, upon which plaintiff seeks to recover, represents damages of a type for which the insurer agreed to indemnify the [insured]. The plaintiff is in court as a beneficiary of the contract between the [insured] and the insurer, and must bring her claim— the judgment—within the terms of that contract. [Citations.]" (*Rafeiro v. American Employers' Ins. Co.* (1970) 5 Cal.App.3d 799, 805 [85 Cal.Rptr. 701] (*Rafeiro*).) Only legal questions are presented as to the scope of the risks covered by the insurance, the risks excluded by the terms of the policy, and the nature of the damages awarded by the judgment. (*Ibid.*)

We discuss IIC's specific challenges to the judgment, which deal with the proper interpretation of the SPP and the evidentiary issues raised. We then turn to the Housing cross-appeal, which contends the trial court erroneously set the amount of covered property damage under the JBR policy periods.

I

*Appeal—SPP Issues*

A

*Introduction*

De novo review of the text of policy provisions applies. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) The text of the SPP states that the insurer will pay, "in addition to the applicable limit of liability: [¶] (a) . . . all costs taxed against the insured *in any suit defended by the Company* and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon." (Italics added.) In our prior opinion, we specified, "At any further proceedings, the trial court should specify whether such awards properly fall within the scope of the supplementary payments provision, since the underlying action was not in fact '*defended by* the Company . . . .' " (Prior opn.) We did not discuss any issues regarding the award of interest under the SPP, although

the underlying original judgment on review included an interest award on the prior default judgment. (*SDHC, supra,* 68 Cal.App.4th 526.) The prior opinion reversing that judgment thus left all the SPP issues open for further factual and legal development, consistent with the analysis of the prior opinion, which is in fact what occurred at this retrial.

Specifically, the trial court's judgment here confirmed the jury's advisory finding that IIC had a duty to defend its insured JBR in the underlying Housing lawsuit. The court ruled, "IIC may not benefit by its breach of duty to defend Reed to the detriment of its insured against whom a judgment has been rendered." This ruling essentially held IIC liable under the SPP to Housing, due to the IIC inaction toward its insured, JBR.

At this point, we wish to clarify that although the underlying judgment in this case was taken by default against the insured JBR, the analysis we make under section 11580, subdivision (b)(2) does not depend on the default status of the underlying proceedings. Here, it is not disputed that the prove-up hearing on default was procedurally sufficient under the "Action Against Company" clause of the policy to establish that some damage was suffered by Housing within the meaning of the policy. Our issue is whether the judgment creditor bringing a section 11580, subdivision (b)(2) action is entitled to recover under the SPP, "on the policy and subject to its terms and limitations" (*ibid.*), in place of the insured against whom the underlying action was successful.

## B

### Contentions on Appeal

To support its contention that interest on the prior default judgment ($647,169.51) and costs of $17,913.19 and attorney fees of $92,129.55 (in the nature of costs awarded against defendants' insured) were improperly awarded against it *"pursuant to the Supplementary Payments coverage of the CGL policy,"* IIC makes several arguments. First, it contends the plain meaning of the SPP language is that it cannot apply absent an insurer's conducting of a defense in an underlying suit. It argues the purpose of the SPP is to call to account those insurers who defend cases brought against their insureds, but who nevertheless delay such case resolution to the insureds' detriment. It argues the SPP was not designed to apply to this type of situation, and if it applies here, the policy language "in any suit defended by the Company" has no meaning.

Further, IIC contends that the SPP must be read in the context of the basic insuring clause, which would not ordinarily cover such costs and fees

derived from an underlying lawsuit. It contends the SPP should be read strictly according to its literal language. Additionally, in its view, this was a very close case regarding coverage under the policy for property damage, which should militate against application of the SPP.

Finally, since IIC does not believe that there may be any contractual basis for an award of SPP costs and interest under these peculiar facts, it argues that the award must be one of extracontractual damages, or bad faith, which would be improper in the context of an action under section 11580, subdivision (b)(2). (See *Amato v. Mercury Casualty Co.* (1997) 53 Cal.App.4th 825, 838-839 [61 Cal.Rptr.2d 909] (*Amato*).) Further, since a Code of Civil Procedure section 998 offer of $750,000 was made by Housing but rejected by IIC, IIC claims certain costs were improperly awarded against it, since if the SPP award was improper, only $200,000 indemnity damages remains and thus the Code of Civil Procedure section 998 offer was not bettered at trial.

Housing responds to these arguments in a number of ways. It first claims that the insurance policy as so construed was merely an illusory bargain, because its recovery as a judgment creditor would be so severely limited if only indemnity payments, not recovery of costs and interests, were allowed. It argues other insurance doctrines indicate the fallacy of the IIC position (e.g., the no action clause). For example, in *Sanchez v. Truck Ins. Exchange, supra,* 21 Cal.App.4th 1778 (*Sanchez*), the court held that an insurer which refuses to defend its insured cannot rely on the "no action" clause in its policy to preclude an action under section 11580. (*Sanchez, supra,* 21 Cal.App.4th at p. 1783.) There, a stipulated judgment was entered in the plaintiff's favor after a pretrial settlement of an action by the plaintiff against her employer, but the trial court found the judgment was unenforceable against the employer's insurer. The Court of Appeal reversed, on the grounds that the plaintiff and her employer had settled the case in good faith after the insurer failed to provide the insured with a defense against the complaint, which sought potentially covered damages. (*Id.* at pp. 1781-1783.)

As part of its analysis, the court in *Sanchez* cited *Malmgren v. Southwestern Auto. Ins. Co.* (1927) 201 Cal. 29, 33 [255 P. 512], which held that a policy could not require as a condition precedent to an injured person's right of action that additional requirements beyond the statutory terms be met, because such imposition of additional requirements was in derogation of or in conflict with the purpose of the statute. (*Sanchez, supra,* 21 Cal.App.4th at p. 1783.) Housing is arguing here that a duty to defend was owed to the

insured and the provisions of section 11580, subdivision (b)(2), indicate there should be consequences to the failure to perform that duty, in the form of statutory recovery by a judgment creditor of the insured.

Housing also argues IIC is in error in claiming these are extracontractual rights not to be allowed to a third party beneficiary of an insurance contract. It contends Housing should recover these costs and interest awards under the written policy terms, because the Action Against Company clause in the policy provides rights to the judgment creditor to recover "to the extent of the insurance afforded by the policy," and "insurance" amounts to a whole bundle of different types of rights to recovery.

Most convincingly, Housing contends this is a fairly simple example of the excuse of a condition precedent, due to the actions of the contracting party in preventing or making impossible the performance or happening of a condition precedent. (*Rains v. Arnett* (1961) 189 Cal.App.2d 337, 347 [11 Cal.Rptr. 299]; *Exchequer Acceptance Corp. v. Alexander* (1969) 271 Cal.App.2d 1, 14 [76 Cal.Rptr. 328].) Although IIC responds that this basic doctrine should not be applied in the insurance context, since few appellate authorities have done so, it does not explain why ordinary rules of contractual interpretation may not apply in this context. (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253].)

The trial court ruled in favor of Housing, concluding on the SPP issue, "IIC may not benefit by its breach of duty to defend Reed to the detriment of its insured against whom a judgment has been rendered. [Citation.]"

After the appeal was briefed and oral argument was held, this court requested further briefing from the parties on the difficult issues surrounding the applicability of the SPP in this action by a judgment creditor of an underlying judgment against the insured. Under section 11580, subdivision (b)(2), the judgment creditor of an insured is a third party beneficiary of the insurance contract between the insurer and the insured. (*Murphy, supra,* 17 Cal.3d 937, 942-943.) In light of the rule stated in *Murphy* that a third party beneficiary's right to performance is based upon the contracting parties' intent to benefit it, and the third party beneficiary "should not be permitted to enforce covenants made not for his benefit, but rather for others" (*id.* at p. 944), we asked whether the SPP in this case was such a contract term or covenant that was made solely for the benefit of the contracting parties (insurer and insured), such that a third party beneficiary should not be allowed to enforce it. We also inquired whether the record showed that this prior default judgment against JBR, the insured, was obtained through a

fully litigated proceeding, such that sufficient evidence supports the under-lying judgment, and whether the policy provided coverage according to the indemnity relief awarded in the judgment.

Finally, in our letter to counsel, we noted that in *Prichard v. Liberty Mutual Ins. Co.* (2000) 84 Cal.App.4th 890, 911-913 [101 Cal.Rptr.2d 298] (*Prichard*), the analysis is made that an SPP entitlement is a function of the insurer's defense obligation, not its indemnity obligation. The court there states that SPP payments are independent of coverage. The parties duly filed their supplemental briefs responding to these issues.

## C

### Analysis

To analyze these issues, we first reiterate that the prior opinion in this case left open for retrial the entire question of any entitlement of Housing to enforce the SPP. Such an entitlement under the SPP must stem from the coverage afforded JBR "on the policy and subject to its terms and limita-tions." (§ 11580, subd. (b)(2).) Housing's rights are those of a third party beneficiary of the insurance contract. We should examine the context in which the SPP clause is found in the policy, to determine its scope of relief and the identity of the parties who may seek redress to obtain such relief. Determining these rights is a legal question dealing with the scope of the coverage of the policy, and the nature of the damages and costs and interest awarded by the prior default judgment. (*Rafeiro, supra,* 5 Cal.App.3d 799, 805.) We should focus not upon general public policy considerations, but on the language of the particular policy. (*Knippen v. Glens Falls Ins. Co.* (D.C. Cir. 1977) 564 F.2d 525, 529.) To address these issues, we outline the terms of the policy and then the applicable rules for interpreting it, as they have arisen in varying factual contexts.

### 1. Policy Terms

The text of the SPP that gave rise to the award of costs and interest to Housing states that the insurer will pay, *"in addition to the applicable limit of liability:* [¶] (a) . . . *all costs taxed against the insured in any suit defended by the Company* and all *interest on the entire amount of any judgment therein* which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon." (Italics added.) As suggested by the italics above, there are several particularly significant portions of the SPP, including costs, interest, and the limit of liability under the policy.

We read the SPP together with other controlling portions of the policy. As relevant here, the insuring clause reads: "The Company will pay on behalf of the insured *all sums which the insured shall become legally obligated to pay as damages* because of: . . . Coverage B - property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and *duty to defend* any suit against the insured seeking damages on account of such bodily injury or property damage . . . ." (Italics added.)

The general intent of section 11580, subdivision (b)(2) is implemented in this policy by the Action Against Company clause: "No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company. Any person . . . who has secured such judgment or written agreement shall thereafter *be entitled to recover under this policy to the extent of the insurance afforded by this policy* . . . . Bankruptcy or insolvency of the insured . . . shall not relieve the Company of any of its obligations hereunder."

2. *Applicable Doctrines in Contract and Insurance Law*

In order to decide Housing's entitlement to the SPP award of costs and interest, we are required to take into account several doctrines in interpreting these policy provisions. ■ Insurance is a means of distributing risks of loss. "An insurance policy is a contract between an insurer and an insured [citations], the insurer making promises, and the insured paying premiums, the one in consideration for the other, against the risk of loss [citations]. [¶] To yield their meaning, the provisions of a policy must be considered in their full context. [Citations.]" (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 44-45 [65 Cal.Rptr.2d 366, 939 P.2d 766].)

■ In the liability context, such loss exposure can take one of two forms. It may be the possibility of legal liability imposed on the defendant, or alternatively, "there is an exposure based on the necessity of mounting a defense against a claim or lawsuit which seeks the imposition of liability." The latter type of loss is addressed by the duty to defend expressed "in the coverage clause and the 'supplementary payments' provision." (4 Cal. Insurance Law and Practice (2001) §§ 41.05[1], 41.05[5], pp. 41-19, 41-23, fn. omitted.)

■ *The duty to defend runs directly to the insured, and is discharged* when the action against the insured is concluded: "Standard comprehensive

or commercial general liability insurance policies provide, in pertinent part, that the insurer has a duty to indemnify the insured for those sums that the insured becomes legally obligated to pay as damages for any covered claim. They also provide that the insurer has a duty to defend the insured in any action brought against the insured seeking damages for any covered claim. . . . [¶] The insurer's duty to indemnify runs to claims that are actually covered, in light of the facts proved. [Citations.] By definition, it entails the payment of money in order to resolve liability. [Citations.] . . . [¶] *By contrast, the insurer's duty to defend runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed.* [Citations.] *It entails the rendering of a service, viz., the mounting and funding of a defense* [citations] *in order to avoid or at least minimize liability* [Citation.] . . . It is discharged when the action is concluded. [Citation.]" *(Buss v. Superior Court, supra,* 16 Cal.4th at pp. 45-46, fn. omitted and italics added.)

■ Special contractual rules apply in the third party beneficiary context created by section 11580, subdivision (b)(2), to limit the rights of a third party claimant against an insured: "As a general rule, absent an assignment of rights or a final judgment, a third party claimant may not bring a direct action against an insurance company on the contract because the insurer's duties flow to the insured. [Citations.] There are several exceptions to the general rule which prohibits a third party claimant from suing an insurer. For example, once a party has a final judgment against the insured, the claimant becomes a third party beneficiary of the insurance policy and may enforce the terms which flow to its benefit pursuant to Insurance Code section 11580. [Citations.]" *(Harper v. Wausau Ins. Co.* (1997) 56 Cal.App.4th 1079, 1086-1087, fn. omitted [66 Cal.Rptr.2d 64] *(Harper).*)

■ Accordingly, a claimant may sue the insurer as a third party beneficiary utilizing traditional contract principles, when the duties under the policy flow directly in favor of the third party (e.g., medical payment provisions in a liability policy). *(Harper, supra,* 56 Cal.App.4th at pp. 1086-1087.) These rights are grounded in Civil Code section 1559, which provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." *(Harper, supra,* 56 Cal.App.4th at p. 1086.) Such third party beneficiary principles do not require that the person to be benefited be named in the contract, but rather allow the third party to qualify as a contract beneficiary if "the contracting parties must have intended to benefit that individual and such intent appears on the terms of the agreement." *(Id.* at p. 1087.) Further: "It is well settled, however, that Civil Code section 1559 excludes enforcement of a contract by persons who are only incidentally or remotely benefited by the agreement. [Citations.] The Supreme Court has held: 'A third

party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him. [Citations.]' [Citations.]" (*Ibid.*)

When the judgment creditor of an insured proceeds against the insurer under section 11580, subdivision (b)(2), many problems can arise concerning (for example) the nature and extent of the injured party's interests in the insurance policy, to what extent the insurer is bound by the judgment or to what extent it can be challenged in the third party claimant's action, and what is the meaning of the language in the statute, "subject to its terms and limitations." (4 Cal. Insurance Law and Practice, *supra,* § 41.60[1], pp. 41-117 to 41-119.) Additionally, the statute allows that the insurer may assert against that creditor (the injured party) any defenses the insurer would have had against the insured. These usually include lack of cooperation with or notice to the insurer. (*Id.,* § 41.62, pp. 41-132 to 41-133.) These concerns are addressed by the policy provision commonly entitled Action Against Company, or the no action clause, such as we have here. (*Ibid.*)

For example, in *Murphy, supra,* 17 Cal.3d at pages 943-944, it is stated that the implied-in-law duty to settle found in the insurance policy does not flow to the third party claimant, and an assignment is needed for a claimant to enforce it. Similarly, there are other limits on a judgment creditor/third party claimant's ability to sue the insurer of the tortfeasor. "The question plaintiff's contention raises is whether a third party judgment creditor of the insured may bring suit against the insurer for breach of the duty to defend. Absent an assignment, the answer is no; a third party claimant cannot bring an action upon a duty owed to the insured." (*Jane D. v. Ordinary Mutual* (1995) 32 Cal.App.4th 643, 650 [38 Cal.Rptr.2d 131] (*Jane D.*).)

To examine whether the SPP should be considered to be a provision not flowing to the benefit of a third party judgment creditor, either directly or indirectly, we look to case law under section 11580.

3. *Related Case Law Analysis*

In *Sanchez, supra,* 21 Cal.App.4th 1778, as relied on by the trial court here, the Court of Appeal held that where an insurer has refused to defend its insured, the injured claimant may settle the action as he or she sees fit, as long as there is no fraud or collusion. The court stated no authority had been presented giving effect to a no action clause where the insurer had wrongfully failed to provide a defense to its insured. Accordingly, the no action clause in the policy was no bar to an action by the third party claimant to

recover benefits from the insurer under section 11580. (*Sanchez, supra,* 21 Cal.App.4th at p. 1783.) As explained by a commentator, this case represents the principle that a stipulated judgment may be enforceable in a direct action against the insurer under section 11580, subdivision (b)(2) where the insurer has "cast the insured adrift" by refusing to provide a defense: " 'Where the insurer refuses to defend, to indemnify or to participate in any way in the underlying lawsuit, the insured may settle the lawsuit to his or her best advantage, so long as there is no fraud or collusion.' [Citation.] " (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2001) ¶ 15:1052, p. 15-189.)

This scenario in *Sanchez, supra,* 21 Cal.App.4th 1778, is different from the case between Housing and IIC, because the policy proceeds sought by the injured claimant were evidently indemnity monies, not costs and interest under an SPP. More importantly, IIC is not relying on the Action Against Company clause to say the underlying case was inadequately litigated, but instead is saying that there is no contractual right for Housing to recover defense costs, because Housing itself was not owed a defense duty, and these are not the types of policy proceeds recoverable by a person or entity who is not itself the insured.

Another related case is *Hand v. Farmers Ins. Exchange* (1994) 23 Cal.App.4th 1847 [29 Cal.Rptr.2d 258], in which the court distinguished between the established rule not allowing a judgment creditor of the insured a right to sue the insurer for bad faith refusal to settle, and a newly announced rule that the judgment creditor may directly sue the insurer for bad faith refusal to pay a final judgment against the insured. (See 2 Cal. Insurance Law and Practice, *supra,* § 13.03[3][e], p. 13-30.) The Rutter Group commentators point out that although the usual rule is that in an action under section 11580, subdivision (b)(2), the judgment is enforceable against the insurer only up to its policy limits, "the result is different where the insurer committed bad faith after the judgment became final. As stated above, the judgment creditor is a third party beneficiary of the policy (including its covenant of good faith and fair dealing). Thus, the insurer owes a duty to exercise good faith in not withholding adjudicated damages owing to the judgment creditor. [See, *Hand v. Farmers Ins. Exch.,* supra, 23 CA4th at 1859, 29 CR2d at 266—insurer continued to unreasonably deny coverage and refused payment of judgment rendered against its insured]." (Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra,* ¶ 15:1041, p. 15-186, italics omitted.) The commentators then say, "It has been suggested that allowing a judgment creditor to sue for bad faith may be inconsistent with [California Insurance Code section] 11580(b)(2), which

limits the creditor to an action 'to recover on the judgment' and subjects that judgment to the policy's 'terms and limitations.' [¶] One case states, '[T]he analysis in *Hand* might be viewed as improperly extending the law of tortious bad faith.' [Citations.]" (Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra,* ¶ 15:1040.1, p. 15-187, italics omitted.) Moreover, since there is no bad faith theory or implied covenant analysis legitimately involved in the case before us, the authority of *Hand, supra,* 23 Cal.App.4th 1847, is not helpful.

Another related case is *Amato, supra,* 53 Cal.App.4th 825, 838-839, in which the insured was allowed to recover damages for his insurer's tortious breach of the duty to defend, which caused him to suffer a default judgment. Even though there was no coverage on the underlying case, the insured in *Amato* was still allowed to recover because of the judicially expanded duty to defend that was breached, as to questionable claims where there had been a potential of coverage. Since Housing is not the insured who is clearly owed the duty to defend, this case does not advance the analysis here.

More relevant is *Jane D., supra,* 32 Cal.App.4th 643, in which the plaintiff had obtained a default judgment for damages against a priest for sexual misconduct. She then sought declaratory relief establishing coverage for the judgment under a liability insurance policy issued to the priest's employer, in part by asserting the insurer had failed to defend the priest. However, she had not been able to obtain an assignment of the priest's cause of action against the insurer for failure to provide a defense. Accordingly, she, as his judgment creditor, could not assert such a duty against the insurer to support her claim under the policy. (*Id.* at p. 650, citing *J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1018 [278 Cal.Rptr. 64, 804 P.2d 689].)

In *Insurance Co. of North America v. National American Ins. Co.* (1995) 37 Cal.App.4th 195 [43 Cal.Rptr.2d 518] (*INA*), an action between successive insurers to determine allocation of liability, this court discussed whether an amount awarded for attorney fees and costs against the insured in the underlying litigation should be applied to reduce the amount due from one insurer under the policy limits, or should be characterized as a " 'cost[] taxed against the Insured in any suit defended by the Company' under the 'Supplementary Payments' section of the policy." (*Id.* at p. 206.) This court concluded as between the two insurers that the fees and costs award was an amount falling under the supplementary payments section of the policy, because there was an underlying contractual fee agreement in an indemnity agreement between the insured (a subcontractor) and the general contractor. This court noted: "That contract included a 'prevailing party' clause entitling

the prevailing party to its attorney fees. Attorney fees under such a contractual clause are allowable as costs. [Citation.] In the underlying [construction defect] suit, the court's award against [the insured] included 'costs,' among which were . . . attorney fees. This evidence supports the conclusion the [fees and costs award] was a 'cost' assessed against [the insured] under the prevailing party clause, which would fall within the Supplementary Payments provision." (*Id.* at pp. 206-207.)

In *Prichard, supra,* 84 Cal.App.4th 890, a liability insurance bad faith action, the court states that an SPP providing for costs is a function of the insurer's defense obligation, not its indemnity obligation: "In a word, the insurance contract obligates the insurer to pay 'costs' *whenever it must defend the suit,* independent of whether those costs would otherwise be covered by way of the insurer's indemnity obligation. [Citation.]" (*Id.* at p. 895, italics added.) There it was the insured who was seeking from his insurer an award of costs assessed against him in the underlying litigation, which he lost even though he received a partial defense under a reservation of rights. (*Id.* at p. 911.)

A commentator in the area has explained the basis for these latter two holdings as follows: "**Attorney fee awards not 'damages':** Attorney fee awards are not 'damages' under a CGL policy. Fee awards do not compensate claimants for the injury that brought them to court and therefore do not fit the concept of 'damages' in its ordinary and popular sense. [Citations.] [¶] . . . **Compare—covered as 'costs taxed against insured':** *However, a CGL policy also obligates a liability insurer to pay 'with respect to any claim or "suit" we defend: . . . 5. All costs taxed against the insured in the "suit."'* . . . [¶] Attorney fee awards authorized 'by contract, statute or law' are recoverable as costs of suit. [Citation.] [¶] Therefore, fee awards against the insured fall within the insurer's defense obligation. [*Prichard v. Liberty Mut. Ins. Co., supra,* 84 [Cal.App.4th] at 912 . . . ; *Insurance Co. of North America v. National American Ins. Co. of Calif.*[, *supra,*] 37 [Cal.App.4th] 195, 206-207 . . .] [¶] . . . **Comment:** Insurers complain that forcing them to pay attorney fee awards against an insured is unfair because the amount awarded often bears no relation to the damages involved (e.g., because of 'lodestar' multipliers). However, if insurers want to exclude coverage for fee awards, they should revise the CGL form. [See *Prichard v. Liberty Mutual Ins. Co., supra,* [84 Cal.App.4th] at 912 . . . , fn. 22.]" (Croskey, et al., Cal. Practice Guide: Insurance Litigation, *supra,* ¶¶ 7:160, 7:160.1, 7:160.2, p. 7A-52, italics omitted and added.)

While this analysis is illuminating, we do not believe it applies to the facts before us, where there is no insured who is seeking recovery due to the duty

to defend, nor is there any issue regarding reimbursement between insurers of such applicable costs provisions. In *INA, supra,* 37 Cal.App.4th 195, the insurer NAICC was apparently involved in defending the underlying construction defect action, and paid that claimant over $300,000 on the underlying judgment. (*Id.* at p. 200.) As between successive insurers, it was properly held liable under its SPP for the attorney fees and costs its insured had to pay a claimant, as part of its defense obligation, so that both indemnity and SPP amounts were separately owed. (*Id.* at pp. 200-201.)

The court in *Prichard, supra,* 84 Cal.App.4th 890, was dealing with a version of the SPP which read in relevant part as follows: " 'We will pay, *with respect to any claim or "suit" we defend*: [¶] . . . [¶] 5. All costs taxed against the insured in the "suit." ' " (*Id.* at p. 911, italics added.) In that case, the insurer had defended the underlying action up to a point. Then, in subsequent bad faith litigation, the insured Prichard was allowed to seek reimbursement from his insurer for attorney fees awarded against him when he lost the underlying suit that was being defended by the insurer, which then refused to indemnify him. These fees were directly related to the defense obligation to the insured and were not sought by a third party judgment creditor.

In contrast, our Housing/JBR/IIC case involves a claim under the policy's SPP by a nonparty seeking to invoke the defense duty owed to the insured, where there was no defense provided below to that insured, JBR. Later, coverage under the policy was found proper. The question remains whether there is any basis for IIC to be held liable under the SPP to Housing, a third party judgment creditor, due to its breach of the duty to defend the insured JBR.

### 4. *Application of Above Rules*

■ Returning to the policy provisions, a threshold question to be resolved is whether we must treat the costs and interest portions of the SPP differently in this context. In relevant part, the SPP requires that the insurer will pay, *"in addition to the applicable limit of liability*: [¶] (a) . . . *all costs taxed against the insured in any suit defended by the Company* and all *interest on the entire amount of any judgment therein* which accrues after entry of the judgment . . . ."* (Italics added.) Housing would argue that either or both of the costs and interest portions may separately justify awards, based on the amounts assessed against the insured, JBR, because the language *"in any suit defended by the Company"* may or may not apply both to the *"all costs taxed against the insured"* and the *"all interest on the entire amount of any*

*judgment therein*" language. However, we disagree, because both the costs provision and the interest provision are equally clearly linked to the defense of the action by the insurer, even though an underlying judgment can be entered and accrue interest regardless of whether there was an insurance defense provided. (See *Knippen v. Glens Falls Ins. Co., supra,* 564 F.2d 525, 529-531, regarding an insurer's duty to tender funds to the insured to stop interest thereon from accruing.) In any case, this policy language regarding interest, "any judgment therein," refers back to the suit that was defended by the Insurer. Thus, we will read the SPP as treating both the costs and interest provisions alike.

■ The key question here is: For whose benefit was the SPP written into the insurance contract, and who can enforce it, in the situation in which there was no defense provided in an underlying action? The SPP obligation clearly arises out of the defense duty. It does not make any difference that it is entitled "supplementary" to the applicable limits of liability, because the coverage question and the SPP issues are different entitlements, based on the type of loss anticipated and to whom.

A similar question arises from reading the SPP together with the Action Against Company clause. Is the "insurance that is afforded by this policy" only indemnity money, or may it also include litigation expenses and other costs and fees as part of the whole bundle of insurance policy entitlements? Any allowable recovery by a judgment creditor under the statute is that which is "on the policy and subject to its terms and limitations." (§ 11580, subd. (b)(2).)

Having considered the available authority, we find several important rules work against Housing's claim to the SPP award of costs and interest. First, the defense duty is a covenant in the policy that runs only to the insured. Under *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal. 4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153], the defense duty terminates at the end of the action. An action for its breach can be brought by the insured or assigned away. (See *Jane D., supra,* 32 Cal.App.4th 643, 650.) However, there is no continuing defense duty that can be redressed later by the third party judgment creditor, by seeking damages for the SPP amounts under section 11580, subdivision (b)(2). Thus, the trial court's analysis was off the mark to say IIC should not benefit from its breach of duty to defend JBR, so therefore an award was due to Housing.

Next, third party beneficiary rules in the insurance context suggest that the statute creates a third party beneficiary relationship between the insurer and

the judgment creditor, but only as to those policy terms that inure directly to the benefit of a judgment creditor. These are the policy terms that deal with the imposition of legal liability. (See 4 Cal. Insurance Law and Practice, *supra*, § 41.05[1], p. 41-19.) The Action Against Company clause says the creditor is entitled to recover "to the extent of the insurance afforded by the policy." Insurance is not defined as a policy term, and could include both substantive indemnity rights and the exposure to litigation expenses. However, it is clear that the judgment creditor can only enforce those covenants in the policy that were included for the benefit of the third party creditor. (*Murphy, supra,* 17 Cal.3d 937.) As to the defense duty, the third party judgment creditor is not a creditor beneficiary, but only an incidental beneficiary. (See *Harper, supra,* 56 Cal.App.4th 1079, 1089.) It seems unlikely that the defense costs provision, or the linked interest provision applying to the judgment rendered "therein" (i.e., in an action defended by the insurer on behalf of the insured) was intended by the parties to the insurance contract to inure to the benefit of an eventual third party judgment creditor.

In *Murphy, supra,* 17 Cal.3d at pages 940, 942, the court discusses the duty to settle, which is not found directly within the insurance policy but which is only implied in law, as not justifying recovery outside the policy terms. Here we have a written, not implied, duty to defend, but it nevertheless runs only to the insured and exists only in the underlying action. (See coverage clause in fn. 5, *ante.*) Accordingly, there is no indication that the third party beneficiary judgment creditor was intended to benefit from it.

Similarly, other limits have been imposed on the judgment creditor/third party claimant's ability to sue the insurer of the tortfeasor. ▆ A third party claimant cannot bring an action upon a duty owed only to the insured, such as the duty to defend, without an assignment of the cause of action for breach of such duty. (*Jane D., supra,* 32 Cal.App.4th 643, 650.) In contrast, because of the statutory purpose of the section 11580, subdivision (b)(2) cause of action to ensure recovery for injured claimants, there is no need for an assignment of the covered insurance benefits portion of the underlying judgment, in order for a judgment creditor to enforce it. ▆ Thus, since the defense duty ordinarily terminates at the end of the underlying action, its existence or breach does not automatically transfer rights to the insured's judgment creditor that would fall within the scope of the benefits provided by the policy's coverage provisions under section 11580, subdivision (b)(2). Like the implied covenant's duty to settle, the defense duty and related costs/interest SPP fall outside the scope of the policy provisions that may be enforced by a judgment creditor of the insured, where there has been no assignment of such a cause of action.

Reading the three important policy provisions together (SPP, insuring clause, Action Against Company), we conclude the duty to defend was owed solely to the insured JBR, and in the absence of an assignment of a failure to defend claim, Housing as the judgment creditor should not be able to recover these related defense costs and interest on the judgment therein as a policy benefit under the SPP by way of a third party beneficiary theory. Otherwise, the duty to defend issue presented by the SPP becomes too closely tied up with the bad faith issues that were not allowed to be included in the retrial, and which unfortunately caused a lot of confusion at trial here.

We are well aware that the condition precedent argument made by Housing has great equitable appeal (i.e., any policy requirement that a defense have been actually provided earlier should be excused as a condition precedent to recovery under the SPP by the creditor, due to the actions of the contracting party [Insurer] in preventing or making impossible the performance or happening of a condition precedent; *Rains v. Arnett, supra,* 189 Cal.App.2d 337, 347). However, we do not read the SPP as containing a condition precedent that the underlying action must have been defended or required to have been defended by the insurer, in order for the SPP to apply, or that such a condition precedent can be excused. Even if it does, the judgment creditor remains only an incidental beneficiary of the insurance contract in this respect. Instead, we read the SPP as giving the right to recover costs taxed against the insured in any suit defended by the insurer, or interest on such a judgment, only to the insured who was directly owed the defense duty. Here, the insured, JBR is defunct. Nevertheless, there simply were no *"costs taxed against the insured in any suit defended by the Company"* that exist in the underlying judgment. Also, there could have never have been any *"interest on the entire amount of any judgment therein,"* since there was no such suit defended by IIC, and Housing cannot now create one through operation of law under section 11580, subdivision (b)(2).

Finally, since only the $200,000 indemnity payment remains recoverable as covered property damage under the policy by Housing, Housing therefore has not improved upon the $750,000 demand that it earlier made, and thus the Code of Civil Procedure section 998 costs should be deleted from the costs provision of the judgment, and we order it modified accordingly (to delete the $81,005.50 expert fees awarded).

II, III*

· · · · · · · · · · · · · · · · · · · · · · · · ·

*See footnote 1, *ante*, page 669.

## DISPOSITION

The judgment is affirmed as modified to strike the damages awards except for the $200,000 representing indemnity, and to reduce the costs award to $35,950.32, by deleting that part of the costs award to Housing that is based on Code of Civil Procedure section 998. As so modified, the judgment in favor of Housing is affirmed. Each party to bear its own costs on appeal. The trial court is directed to prepare a new judgment as modified above.

Benke, Acting P. J., and Nares, J., concurred.

A petition for a rehearing was denied February 19, 2002, and respondents' petition for review by the Supreme Court was denied April 10, 2002. George, C. J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.