Filed 10/2/23

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| MICHAEL R. ISOM, | B317433 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MC025723) |
| v. | |
| BRANDON T. MACCARTHY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge. Affirmed.

McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner, and Timothy J. Buchanan for Defendant and Appellant.

Kuzyk Law and Robert Ryan for Plaintiff and Respondent.

Appellant Brandon T. MacCarthy (MacCarthy) appeals from a post-judgment order awarding respondent Michael R. Isom (Isom) attorney fees pursuant to Code of Civil Procedure section 1021.4.[1] MacCarthy argues that the trial court erred by not reducing the fee award in accordance with the percentage of Isom's comparative fault, that the court abused its discretion by awarding fees that were not supported by sufficient documentation, that the hourly rate awarded for a first-year attorney was unreasonable, and that the court applied an excessive multiplier to the lodestar amount. We disagree with MacCarthy's arguments and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Accident and Jury Trial[2]

Isom and MacCarthy were co-workers, and on June 3, 2014, left work together in MacCarthy's vehicle to go to a restaurant. Isom and MacCarthy stopped at a liquor store to purchase whiskey and were drinking it on the way to the restaurant,

---

[1] All further references are to the Code of Civil Procedure, unless otherwise specified.

[2] This is MacCarthy's second appeal from the Superior Court proceedings. In the first appeal, Case Number B315031, MacCarthy challenged the jury verdict against him. We previously granted MacCarthy's request for judicial notice of: (1) the entirety of the clerk's transcript on appeal in Case Number B315031, (2) the entirety of the reporter's transcript on appeal in Case Number B315031, and (3) the admitted trial exhibits made part of the record in Case Number B315031. Further, we take judicial notice of our opinion of the prior appeal, *Isom v. MacCarthy* (July 28, 2023, B317433 [nonpub. opn.]), affirming the judgment in Isom's favor. (Evid. Code,§§ 452(d), 459.) Our summary of the facts relating to the accident and trial is taken from our prior opinion.

where they continued drinking alcoholic beverages. They then went to MacCarthy's residence and consumed more alcoholic drinks. Later that night, they set out in MacCarthy's vehicle, intending to go to a gentlemen's club. While driving with Isom as his passenger, MacCarthy ran a stop sign, crashed through a chain link fence into a concrete wash, and hit a culvert. Blood drawn at the hospital revealed that MacCarthy's blood alcohol level was 0.22, and Isom's was 0.19. MacCarthy was subsequently charged with felony driving under the influence of alcohol and causing injury, to which he entered a nolo contendere plea. Isom was seriously injured, and on September 1, 2015, he filed his complaint against MacCarthy asserting a single cause of action for negligence.

Years later, on May 4, 2021, trial commenced and continued for more than three weeks. Following the trial, the jury returned its special verdict, finding that MacCarthy was negligent in causing injury to Isom. Further, the jury assigned 25 percent of responsibility to Isom for his injuries. Isom was awarded special and general damages totaling $20,636,313.44. The trial court reduced the award by 25 percent for Isom's comparative negligence and entered judgment in the net amount of $15,477,235.08.

## B.    The Attorney Fee Award

Isom then moved for attorney fees under section 1021.4, which allows the court to award a plaintiff attorney fees in actions based on a defendant's felony conviction. Isom argued that the court should award him fees because MacCarthy was

3

convicted of felony driving under the influence of alcohol.[3] Isom sought fees of $6,190,894.03, which were based on the 40 percent contingency fee in the retainer agreement between Isom and his counsel, multiplied by the judgment of $15,477,235.08. MacCarthy opposed the motion, arguing that the request was improper because it was not based upon the lodestar method and unreasonable because Isom was found contributorily negligent. In reply, Isom argued that the request based on the 40 percent contingency fee was reasonable, and Isom's lead counsel, Mark J. Leonardo, submitted a declaration explaining that as a personal injury plaintiff's lawyer, he did not keep traditional timesheets but instead kept track of the cases he worked on each day.

When the motion was first heard on August 18, 2021, the court indicated that Isom was entitled to attorney fees under section 1021.4 as the prevailing party. However, the court denied Isom's request for an award based solely on the contingency fee in his retainer agreement with his counsel. The court then continued the hearing to October 28, 2021, to allow Isom to file a supplemental brief addressing the number of hours Isom's counsel spent working on the case.

Isom filed his supplemental brief with another declaration from Leonardo and new evidence as to the hours expended on the case. Leonardo stated that he did most of the work on the case, spending more than 1,009 hours on it from filing through trial.

---

[3] MacCarthy does not dispute that his nolo contendere plea constitutes a conviction for purposes of section 1021.4. (See *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 725, fn. 9 ["A nolo contendere plea to a crime punishable as a felony has the same effect as a guilty plea for all purposes. (Pen. Code, § 1016.) A plea of guilty constitutes a conviction"], disapproved on other grounds in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, fn. 19.)

He added that four other attorneys worked on the case for a total of 180 hours over the years: Tyler Oldham-Monroe (100 hours), Don Sherwyn (30 hours), Arturo Salinas and John V. Bell (combined total of 50 hours for both). Leonardo described the work performed by the other attorneys, and he attached a chart with descriptions of the tasks he performed and the estimated time he worked on the case each day. Leonardo further stated that, given his experience, a reasonable hourly rate for him would be between $400 to $500 per hour. Finally, Isom requested an enhancement or multiplier be applied to the lodestar amount but did not identify what the multiplier should be. In his opposition to the supplemental brief, MacCarthy asserted that there was insufficient evidence to support the hours claimed, and he contended that a multiplier to the lodestar amount was unjustified. MacCarthy argued that if a multiplier were used, any multiplier over two would be excessive.

Following argument at the October 28, 2021, hearing, which was not reported, the court issued a ruling, finding that Isom's attorneys' 1,189.1 claimed hours and a "blended rate" for Isom's attorneys of $450 per hour were reasonable (1,189.1 [total hours] x $450 [hourly rate] = $535,095). The court then determined that there were grounds to apply a "two-times" (2.0) multiplier to the lodestar amount due to the risk that plaintiff's counsel took in providing legal services without the certainty of payment. Isom, thus, was awarded $1,070,190 in attorney fees ($535,095 x 2.0 multiplier). MacCarthy timely appealed.

5

## DISCUSSION

## A. Legal Principles and Standard of Review

In California, the fee setting inquiry begins with the "'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM Group*).) "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." (*Ibid.*) Whether a legal basis exists for an attorney fee award is a question of law that we examine de novo, and we review the amount of fees awarded for abuse of discretion. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751; *San Francisco CDC LLC v. Webcor Construction L.P.* (2021) 62 Cal.App.5th 266, 285.) The court's factual findings in support of its determination are reviewed for substantial evidence. (*In re Marriage of Knox* (2022) 83 Cal.App.5th 15, 25.)

"'[A]n experienced trial judge is in a much better position than an appellate court to assess the value of the legal services rendered in his or her court, and the amount of a fee awarded by such a judge will therefore not be set aside on appeal absent a showing that it is manifestly excessive in the circumstances.' [Citation.] 'The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination.' [Citation.]" (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1509 (*Loeffler*).) "'Fees approved by the trial court are presumed to be reasonable, and the objectors must show error in the award.'" (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 488.)

**B.    The Trial Court Was Not Required to Reduce Isom's Attorney Fee Award in Accordance with his Comparative Fault**

MacCarthy argues that because the jury found Isom was 25 percent contributorily negligent, the trial court erred as a matter of law by not reducing Isom's attorney fee award by the same percentage.  We disagree.

MacCarthy does not dispute that Isom was entitled to a fee award under section 1021.4.  Section 1021.4 provides:  "In an action for damages against a defendant based upon that defendant's commission of a felony offense for which that defendant has been convicted, the court may, upon motion, award reasonable attorney's fees to a prevailing plaintiff against the defendant who has been convicted of the felony."  Nothing in the statute's plain language requires a mandatory reduction based on the percentage of a plaintiff's comparative fault.  (See *DeNike v. Mathew Enterprise, Inc.* (2022) 76 Cal.App.5th 371, 384 ["'[T]he words of a statute are generally the most reliable indicator of legislative intent'"]; see also *Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 79 ["we will not read a requirement into a statute that does not appear therein"].)

Furthermore, MacCarthy acknowledges that there is no case law supporting a mandatory reduction of awarded fees where the plaintiff has been found contributorily negligent.  (See *Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1398 ["while the degree of the plaintiff's success in obtaining the objectives of the litigation is a factor that the trial court may consider in determining an award of reasonable attorney fees under a fee statute [citations], . . . we determine that there is no

7

requirement that the trial court make an award of attorney fees in an amount that is commensurate with or in proportion to the degree of success in the litigation"].) Instead, a victim's fault "is merely a factor for the trial court to consider in its discretion to award [fees under section 1021.4]." (*Sommers v. Erb* (1992) 2 Cal.App.4th 1644, 1650 (*Sommers*) [affirming attorney fee award under section 1021.4 to plaintiff in case against felony drunk driver, even though plaintiff was also intoxicated at time of accident], citing *Wood v. McGovern* (1985) 167 Cal.App.3d 772, 779 [factors for the trial court to consider in exercising its discretion to award fees under section 1021.4 include the victim's fault].)

MacCarthy argues that *Sommers* does not apply here because it did not involve a determination of the plaintiff's fault. In *Sommers*, a motorcyclist was injured when he collided with a pick-up truck driven by the defendant. (*Sommers, supra,* 2 Cal.App.4th at p. 1646.) The defendant was convicted of a felony count of causing great bodily injury while driving under the influence. (*Ibid.*) The parties filed a stipulated judgment in favor of the motorcyclist and expressly left open the issue of attorney fees for resolution by the trial court. (*Id.* at p. 1647.) After moving for attorney fees under section 1021.4, the trial court awarded the motorcyclist his requested fees. (*Ibid.*) The defendant challenged the award, in part, on the ground that the motorcyclist was a "non-innocent victim" because he was also driving under the influence at the time of the accident. (*Ibid.*) The Court of Appeal upheld the award. (*Id.* at p. 1652.) While MacCarthy contends that *Sommers* is distinguishable because there was no jury finding of comparative fault, there also was no holding that a fee award must be reduced in proportion to

8

comparative fault.  *Sommers* considered the motorcyclist's intoxication and found that his "fault . . . or even his criminal behavior . . . [was] not a bar to recovery of attorney's fees under section 1021.4." (*Id.* at p. 1650.)  Such factors are for the trial court to consider in its discretion to award fees.  (*Ibid.*)

We also find MacCarthy's reliance on *People v. Millard* (2009) 175 Cal.App.4th 7 (*Millard*), unpersuasive.  In *Millard*, after the defendant was found guilty of driving under the influence and causing great bodily injury to another person following an accident with a motorcyclist, the motorcyclist was awarded victim restitution pursuant to Penal Code section 1202.4.  (*Id.* at p. 19.)  The court weighed the evidence and determined that the motorcyclist was 25 percent comparatively at fault for the accident, and so the court concluded the restitution amount for his economic losses should be reduced by 25 percent to reflect his comparative negligence. (*Ibid.*)  The People appealed this order, but it was affirmed. (*Id.* at pp. 20, 41.)  *Millard* adopted *Sommers's* reasoning and held that a trial court could consider a victim's comparative negligence in making a restitution order; however, it did not hold that a reduction was mandated based on the percentage of a victim's comparative fault.[4]  (*Id.* at pp. 40–42.)

_____

[4]     MacCarthy further cites to *Baker v. Mid-Century Ins. Co.* (1993) 20 Cal.App.4th 921 (*Baker*), in arguing that Isom should not be allowed to recover attorney fees to the extent he was found liable for his injuries.  In *Baker*, the plaintiff sought to hold an insurance company liable for payment of attorney fees the plaintiff obtained under section 1021.4 against the insurance company's insured.  (*Id.* at p. 922.)  The insurer had no obligation to pay the fees because the risk of liability for fees under section 1021.4 is uninsurable.  (*Id.* at pp. 922–923, 926.)  These issues concerning the payment of fees by an insurer are not before us, and thus, *Baker* is inapposite.

Accordingly, the trial court was not required as a matter of law to reduce Isom's attorney fee award by the percentage he was determined to be at fault. His fault was instead a factor for the court to consider in its discretion to award fees.[5]

## C.    MacCarthy Does Not Establish that the Trial Court Abused its Discretion

MacCarthy argues the trial court abused its discretion by (1) failing to consider Isom's comparative fault in setting the amount of a reasonable fee, (2) accepting insufficient documentation of the time spent working on the case, (3) awarding the rate of $450 per hour for the work of a first-year associate, and (4) applying a 2.0 multiplier to the lodestar amount. We conclude MacCarthy does not demonstrate that the trial court abused its discretion.

### 1.    *The Record Indicates the Trial Court Considered Isom's Comparative Fault*

As to MacCarthy's contention that the trial court did not consider Isom's comparative fault, the record shows otherwise. The court's October 28, 2021, minute order begins by recognizing that "[t]he jury apportioned 25 [percent] of the fault to [p]laintiff." It states that the court considered all documents relating to the motion, and in the original and supplemental briefs, the parties argued extensively about the effect Isom's contributory

---

[5]    As an alternative argument, MacCarthy asserts that even if the 25 percent reduction was not mandated, the court abused its discretion by failing to consider Isom's comparative negligence in setting the amount of a reasonable fee. We address this and MacCarthy's other abuse of discretion claims below.

10

negligence should have on a fee award.  The order further acknowledges *Sommers's* holding that the fault of the victim is a factor for the trial court to consider when exercising its discretion to award attorney fees.  (*Sommers*, *supra*, 2 Cal.App.4th at p. 1650.)

While the parties dispute whether the court considered Isom's comparative fault at the October 28, 2021, hearing, MacCarthy did not provide a reporter's transcript of the hearing.  Thus, we presume the court considered Isom's fault in setting the fee award.  (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 ["'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court'"]; see also *Rhule v. WaveFront Technology, Inc.* (2017) 8 Cal.App.5th 1223, 1128–1229 [presuming fee order was correct, where appellant's failure to provide record of fee hearing deprived appellate court of knowledge concerning trial court's reasoning, notwithstanding court's issuance of written ruling].) Because the record does not show that the trial court failed to take Isom's comparative fault into account at the hearing or otherwise, we cannot conclude the court abused its discretion. (See *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296 [claim will be resolved against party challenging attorney fee if they do not provide adequate record]; see also *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447 [affirming judgment because the record was inadequate to conclude the trial court abused its discretion in determining the attorney fee was reasonable].)

11

2. *The Fee Award was Supported by Substantial Evidence*

To the extent MacCarthy asserts that Isom's counsel's declaration submitted with the supplemental brief should have been deemed inadmissible, the record does not show, and MacCarthy does not contend, that he objected to the declaration's admissibility in any respect.  By failing to object, MacCarthy forfeited this claim.  (Evid. Code, § 353; *In re Marriage of Kerry* (1984) 158 Cal.App.3d 456, 466 ["Even if the affidavit in support of a motion . . . contains hearsay, legal conclusions or other objectionable contents, failure to object on these grounds in the trial court waives the defects, and the affidavit becomes competent evidence"].)

MacCarthy further contends that the evidence submitted with Isom's request for attorney fees did not support the award. Isom's counsel, Leonardo, filed a declaration with the moving papers providing that he worked on this case for six years and nine months, which included conducting written discovery, numerous depositions, opposing MacCarthy's motion for summary judgment, arguing 25 motions in limine, and, including jury selection, a 17-day trial.  With the reply, Leonardo stated that "[a]s a personal injury plaintiff's lawyer, [he] d[id] not keep time sheets in the traditional sense as an attorney would if he or she were billing by the hour," but he submitted a chart reflecting the days that he worked on the case.  Thereafter, Leonardo filed the declaration with Isom's supplemental brief estimating the time expended by himself and the four other attorneys on the case, and a more detailed chart describing the tasks, with time estimates, that Leonardo worked on each day.

12

"The law is clear [ ] that an award of attorney fees may be based on counsel's declarations, without production of detailed time records." (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375; see also *Steiny & Co. v. California Electric Supply Co.* (2000) 79 Cal.App.4th 285, 293 ["attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records"].) The court reviewed Leonardo's declaration detailing the hours he and the other attorneys spent on this case, and the chart listing the work performed and estimated time spent on each task. It found the evidence credible and sufficient to show the attorneys spent a total of 1,189.1 hours on this case.

While MacCarthy makes much of Leonardo's initial statement that he could not ascertain the exact number of hours worked on the case because he does not keep itemized timesheets, Leonardo's subsequent declaration contained his estimated time spent on the case, along with a description of the work performed.[6] Regarding MacCarthy's contention that the entries are in block billing format, "block billing is not objectionable 'per se.'" (*Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 830.) The court expressly determined the hours claimed were a "reasonable amount of time to spend on a case that was filed on September 1, 2015[,] and went to trial on May 5, 2021." The trial court had sufficient information before it to make this determination. (*Building a Better Redondo, Inc. v. City of*

---

[6] At the August 18, 2021, hearing, Leonardo explained to the court that he could look at the descriptions of work that he put on his daily timesheets to estimate how much time he worked on the case each day.

13

*Redondo Beach* (2012) 203 Cal.App.4th 852, 874 ["It is not our role . . . to second-guess the trial court on such matters as whether the hours expended are justified by the product produced . . . . The trial court was fully cognizant of the quality of the services performed, the amount of time devoted to the case and the efforts of counsel"].) We conclude the court did not abuse its discretion when it based the attorney fee award on the information in the chart and Leonardo's declaration.

3. *The Use of a Blended $450 Hourly Rate for Isom's Counsel was Not an Abuse of Discretion*

In his declaration submitted with the supplemental brief, Leonardo asserted that given his experience and success on the case, a reasonable hourly rate would be between $400 to $500 per hour. Leonardo added that he and three other attorneys who worked on the case–Salinas, Bell, and Sherwyn–each had more than 30 years' experience practicing law. The final attorney working on the case, Oldham-Monroe, was a first-year associate responsible for less than 10 percent of the total hours used to calculate the lodestar amount. MacCarthy has no issue with a $450 hourly rate for Leonardo, Salinas, Bell, and Sherwyn, but he argues there was no evidence to support the rate for Oldham-Monroe as a first-year associate.

What constitutes a "reasonable hourly rate" depends on the "experience, skill, and reputation of the attorney requesting fees. [Citation.]" (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1009, (*Heritage Pacific*).) It is generally the rate "prevailing in the community for similar work," which can then be adjusted based on factors that are specific to the case. (*PLCM Group, supra,* 22 Cal.4th at p. 1095.) However, "[t]he

14

court may rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate." (*Heritage Pacific*, *supra*, 215 at p. 1009.)

The court found not that $450 was a reasonable rate specifically for Oldham-Monroe, but that a blended rate of $450 was reasonable for Isom's attorneys to bill on this case based on the court's own "experience and knowledge of reasonable rates." Notably, MacCarthy did not submit evidence of current rates contradicting the court's blended rate for Isom's attorneys. As Isom asserts, the trial court may have found $500 per hour reasonable for Isom's four attorneys with over 30 years' experience but set a reduced blended rate to account for Oldham-Monroe's experience, as Oldham-Monroe's total time working on the case was a small percentage of the hours used to calculate the lodestar amount. Moreover, the court's written ruling shows that it considered many factors in making the fee award, including the experience of the requesting attorneys and its own knowledge of the legal market. (See *PLCM Group*, *supra*, 22 Cal.4th at p. 1096 ["'The value of legal services performed in a case is a matter in which the trial court has its own expertise'"]; see also *Heritage Pacific*, *supra*, 215 Cal.App.4th at p. 1009 [court may rely on its own familiarity with the local legal market in setting the hourly rate].) Accordingly, MacCarthy does not establish that the court abused its discretion by setting a $450 blended hourly rate for Isom's attorneys. (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 557 ["[A]n abuse of discretion transpires if '"the trial court exceeded the bounds of reason"' in making its award of attorney fees"]; see also *Olson v. Cohen* (2003) 106 Cal.App.4th 1209, 1217 ["We will

reverse [an award of attorney fees] only if the amount awarded is so large or small that we are convinced it is clearly wrong"].)

4. *The Court Did Not Abuse Its Discretion in Awarding a 2.0 Multiplier*

MacCarthy argues that the use of a 2.0 multiplier based solely on the contingent nature of Isom's fee arrangement with his counsel was an abuse of discretion. The purpose of a fee enhancement, or multiplier, is "primarily to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases as a class." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1138 (*Ketchum*).) Factors that the court may consider in adjusting the lodestar include "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." (*Id.* at p. 1132.) "There is no magic formula; any one factor may justify an enhancement." (*Sonoma Land Trust v. Thompson* (2021) 63 Cal.App.5th 978, 986; see also *Krumme v. Mercury Ins. Co.* (2004) 123 Cal.App.4th 924, 947 ["'There is no hard-and-fast rule limiting the factors that may justify an exercise of judicial discretion to increase or decrease a lodestar calculation.' [Citation.] There are numerous such factors, and their evaluation is entrusted to a trial court's sound discretion; any one of those factors may be responsible for enhancing or reducing the lodestar"].)

In his supplemental brief, Isom requested a multiplier be applied to the lodestar amount but did not identify the multiplier to be used. In opposition, MacCarthy argued that Isom's attorney

16

fee award should not be enhanced, but if it was, a multiplier of no more than 2.0 should be used. The trial court adopted MacCarthy's suggestion. While the trial court noted that there was "no evidence that the questions in this case were novel or difficult, that there was extraordinary skill displayed, or that other employment was precluded," Isom's attorneys were working under a contingent fee arrangement, which provided a basis for increasing compensation to the lawyers who risked never getting paid.

MacCarthy does not dispute that the contingent nature of Isom's fee arrangement alone was sufficient to justify the use of a multiplier. (*Sonoma Land Trust v. Thompson*, *supra*, 63 Cal.App.5th at p. 986; *Krumme v. Mercury Ins. Co.*, *supra*, 123 Cal.App.4th at p. 947.) Further, MacCarthy does not cite any authority holding that the 2.0 multiplier, which MacCarthy suggested, constitutes an abuse of discretion in this case. (See *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255 ["Multipliers can range from 2 to 4 or even higher"], disapproved on another point in *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260.) The cases that MacCarthy relies on to argue that a multiplier of no more than 1.2 should have been used do not hold that a higher multiplier is improper. (See e.g., *Pulliam v. HNL Automotive Inc.* (2021) 60 Cal.App.5th 396, 408–409; *Sonoma Land Trust v. Thompson*, *supra*, at p. 978; *Building a Better Redondo, Inc. v. City of Redondo Beach*, *supra*, 203 Cal.App.4th at p. 852.) They simply do not address the issue.[7]

_____

[7] While MacCarthy asserts that "no case has been located in which a court applied a 2.0 multiplier and which was affirmed on appeal for any reason," our research has shown that such cases exist. (See e.g., *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 66 ["we are *(Fn. is continued on the next page.)*

17

(*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 ["'It is axiomatic that cases are not authority for propositions not considered'"].)

Isom's attorneys risked receiving no compensation for the six years of work they put into the case. It is recognized that an enhanced fee is appropriate to compensate attorneys for taking such risks: "'A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. . . . [Citation.]' 'A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.' [Citations.]" (*Ketchum*, *supra*, 24 Cal.4th at pp. 1132–1133.) Indeed, the court's ruling acknowledges the length of the case and the fact that Isom's attorneys litigated this action at risk of never receiving compensation.[8]

---

not persuaded that the 2.5 multiplier that class counsel are to receive is so out of line with prevailing case law as to constitute an abuse of discretion"], citing *City of Oakland v. Oakland Raiders* (1988) 203 Cal.App.3d 78 [affirming a multiplier of 2.34]; *Santana v. FCA US, LLC* (2020) 56 Cal.App.5th 334, 351–354 [application of 2.0 multiplier was not abuse of discretion].)

[8]     Regarding MacCarthy's contention that a reduced multiplier is warranted because Isom's counsel submitted evidence of block billing, as analyzed above, the evidence was sufficient to support the fee award. To the extent that MacCarthy contends that the trial court did not sufficiently consider the multiplier at the hearing, without a transcript, the record does not affirmatively show that the trial court failed to analyze any relevant factors in selecting the multiplier.

On this record, we do not find that the award is manifestly excessive or that it shocks the conscience. (*Loeffler, supra,* 174 Cal.App.4th at p. 1509.)[9]

**D.     Attorney Fees on Appeal**

Isom contends he is entitled to recover attorney fees incurred on appeal, which MacCarthy does not dispute in his reply. We agree. (*Morcos v. Board of Retirement* (1990) 51 Cal.3d 924, 929–930 [attorney fees authorized by statute include attorney fees on appeal].) ""'Although this court has the power to fix attorney fees on appeal, the better practice is to have the trial court determine such fees.'"" (*SASCO v. Rosendin Electric, Inc.* (2012) 207 Cal.App.4th 837, 849.) We, therefore, remand the matter for the trial court to determine, on appropriate motion, the amount of fees.

---

[9]     Because we find no error, we do not address Isom's argument that any error concerning the multiplier was invited by MacCarthy's arguments in the trial court that any multiplier over 2.0 was unwarranted.

## DISPOSITION

The order is affirmed.  Respondent, Isom, shall recover his attorney fees and costs incurred on appeal.



MORI, J.


We concur:



CURREY, P. J.



COLLINS, J.